FEDERAL DEPOSIT INSURANCE COR-PORATION, in its Capacity as Receiver and Liquidating Agent for Farmers and Merchants Bank of Huntsville, Missouri, Respondent–Appellant,

v.

G. III INVESTMENTS, LTD., d/b/a the Sparks Co., and Freida Barbour, Appellants–Respondents,

v.

John J. GILLAN and Leroy Gillan, Respondents (To FDIC's Appeal).

Nos. WD 40240, WD 40241.

Missouri Court of Appeals, Western District.

Oct. 11, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1988.

Andrew H. McCue, and John Harl Campbell, Campbell and Meyers, Kansas City, for G. III Investments, Sparks and Barbour.

J. Jeffrey Spainhower, Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for FDIC.

Joseph Y. DeCuyper, Kansas City, for Gillan.

Before CLARK, P.J., and LOWENSTEIN and FENNER, JJ.

CLARK, Presiding Judge.

The Federal Deposit Insurance Corporation as liquidating and receiving officer for Farmers and Merchants Bank of Huntsville brought this suit in the stead of the bank for breach of contract against G. III Investments, G.W. Sparks III and Freida Barbour, insurance brokers, for failure to obtain an insurance policy on property mortgaged to the bank. The issue in the case involves the principles of contract liability to a third party beneficiary of the contract.

Shorn of numerous facts not relevant to the questions on appeal, the origin of the case may be summarized as follows. On November 6, 1979, Gillan Trucking, Inc., borrowed $90,000 from the Farmers Bank to construct a night club. The land was owned by John J. Leroy and Jane Gillan. John and Leroy signed the note to the bank and they, together with Jane Gillan, signed a deed of trust on the property to secure repayment. A second loan of $40,000 was later obtained on similar terms. The night club building burned in March, 1981. The fire was attributed to the arson of John J. Gillan. At the time of the fire, the debt owed the bank on the notes amounted to $130,881.60.

When the loan was first arranged, there was some discussion between a bank officer and Gillan to the effect that a policy of fire insurance would be obtained. No specific amount of coverage was mentioned nor were particular terms of coverage discussed. Thereafter, Gillan contacted the defendants who arranged for a policy to be issued by the Hartford Insurance Company. That policy named the bank as mortgage loss payee and a copy of the policy was delivered to the bank.

After the first year of the insurance coverage, the Hartford refused to renew the policy. Gillan requested the defendants to replace the insurance with another company and a policy was obtained from the St. Paul Surplus Lines Insurance Company. Unlike the Hartford policy, the St. Paul policy did not name the bank as a loss payee. This omission was not noticed at the time by Gillan, defendants or the bank. The evidence conflicted as to whether the bank was aware of the terms of the St. Paul policy and whether the bank was supplied a copy. Gillan testified he took a copy of the policy to the bank but Vic Whitaker, a bank officer, reported that when he looked in the bank files after the fire, he could find no policy.

A claim was made against St. Paul for the fire loss. The claim was denied on the ground of arson. The balance on the loan remains unpaid, except for a fund of $65,000 which may or may not become available to the bank depending on the outcome of an associated controversy.[1]

---

1. After the fire, the land described in the deeds of trust to the bank was sold under an agreement between the bank and Leroy and Jane Gillan. The proceeds were placed in a certificate of deposit in the joint names of all the parties. This strategy was evidently adopted to avoid the consequences of a foreclosure sale which would extinguish the bank's claim in this

■ The controversy about the insurance coverage centers on the type of mortgage coverage which should have been supplied by the St. Paul policy. The Hartford policy named the bank as loss payee under a standard or union mortgage clause. Such a clause constitutes a separate agreement between the insurer and the mortgagee which cannot be defeated by a breach of policy conditions on the part of the mortgagor. *Waynesville Security Bank v. Stuyvesant Ins. Co.*, 499 S.W.2d 218, 220 (Mo. App.1973). Thus, had the bank been named as a loss payee in the St. Paul policy under a union mortgage clause, the defense of arson committed by Gillan would not have precluded the bank from obtaining payment on the fire claim.

After the fire, an intermediate agent representing the St. Paul Company in dealing with Sparks Company, and at G.W. Spark's request, issued a policy endorsement naming the bank as mortgagee loss payee.[2] The insurance company refused to recognize the endorsement because the agent was asserted to have no authority to so amend a policy after a loss. This is not an issue in contest.

It may be assumed, there being no evidence to the contrary, that the insurance company was willing to honor the bank's claim to an interest in any settlement made of a loss covered by the policy, but it was unwilling to broaden the coverage by extending the bank the benefits of union mortgage coverage.

Freida Barbour, on behalf of the insurance brokerage, freely acknowledged that the order given her by John J. Gillan had not been executed in that the Hartford policy had not been replaced with equivalent coverage. The matter was attributed to oversight in failing to make an adequate verification of the insuring agreements when the policy was delivered. According to the insurance brokers, however, the Gillans were also at fault for failing to examine the policy to determine if the coverage was the same they had ordered.

This suit was brought by the bank against the insurance brokers on the theory that the bank was the intended third party beneficiary of the agreement between the brokers and the Gillans to obtain the replacement insurance policy including union mortgage coverage for the bank. The allegation was that the brokers breached the contract to supply insurance when the policy delivered did not conform to the coverage ordered. The brokers filed a third party petition naming the Gillans as third party defendants and seeking contribution and indemnity on the theory that the Gillans should have noticed the omission of the bank as loss payee and were therefore at fault themselves.

The case was submitted to a jury on the bank's petition and the brokers' third party petition with instructions for apportionment of fault.[3] The jury found in favor of FDIC as representative for the bank and assessed fault 50% to the brokers and 50% to John and Leroy Gillan. The verdict, before an abortive attempt by the trial judge to add pre-judgment interest on a post-verdict motion, was in the amount of $40,586.70. The FDIC and the insurance brokers, G. III Investments, doing business

suit, leaving only a suit for a deficiency against the makers.

2. The policy form used to write the Gillan insurance included a union mortgage clause effective, however, only if the policy also named a mortgagee loss payee. Because the St. Paul policy as originally written named no mortgage holder as loss payee, the union mortgage clause was inoperative and was effectively deleted.

3. The third party petition alleging negligence of the Gillans should have been dismissed or, failing that, the court should have refused the instructions on apportionment of fault. *See* MAI 4.13 (1981). The cause of action by the bank was submitted on breach of contract, the failure of the insurance brokers to deliver the insurance as ordered. Even were the Gillans not to have exercised care in examining the policy, contributory negligence is not a defense or a basis for apportioning fault in a breach of contract suit. The anomalous result of the instructions given here was to grant the bank judgment against the Gillans for one-half of the claim, an amount for which they were already liable under the note. The issue is, however, irrelevant in view of the conclusion in this opinion that the bank stated no cause of action and was not entitled to relief against the insurance brokers.

as the Sparks Company, and Freida Barbour, appeal.

The insurance brokers contend, in the point dispositive of this appeal, that their motion for a directed verdict at the close of all the evidence and their motion for judgment notwithstanding the verdict should have been sustained because the FDIC did not make a submissible case. They argue that the bank, as the predecessor in interest to the FDIC's claim, was not entitled to sue for breach of the contract between the Gillans and the insurance brokers because the bank was, at most, no more than an incidental third party beneficiary.

A third party beneficiary is one who is not privy to a contract but who is benefited by it and who may maintain a cause of action for its breach. *Volume Services, Inc. v. C.F. Murphy & Assoc.*, 656 S.W.2d 785, 794 (Mo.App.1983). Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action. Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on a third person, but rather on an intent that the promisor assume a direct obligation to him. *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 41–42 (Mo.App.1980).

Missouri has adopted the classification of third party beneficiaries appearing in the Restatement of Contracts § 133(1) (1932). *Terre Du Lac Ass'n. v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 213 (Mo.App.1987). The classes are: donee beneficiaries, creditor beneficiaries and incidental beneficiaries.

A person is a donee beneficiary if the purpose of the contract between promisor and promisee is to confer some right under the contract on the beneficiary and that right or performance is not one due to the beneficiary or owed by the promisee. *Id.* A creditor beneficiary is one upon whom the promisee intends to confer the benefit of the performance of the promisee's contract with the promisor and thereby discharge an obligation or duty the promisee owes the beneficiary. *Wilson v. General Mortgage Co.*, 638 S.W.2d 821, 823 (Mo. App.1982). The rights of a donee beneficiary and a creditor beneficiary as against the promisor to enforce the contract are the same. The difference is in the presence or absence of an obligation between beneficiary and promisee which the undertaking satisfies.

An incidental beneficiary is distinguished from a donee or creditor beneficiary in that the incidental beneficiary has no right to performance of the contract between promisor and promisee. An incidental beneficiary does as the name suggests, derive some benefit from the contract but the agreement between promisor and promisee does not itself contemplate conferring the benefit upon the third party which incidentally results. An incidental beneficiary cannot sue to enforce the contract. *Teter v. Morris*, 650 S.W.2d 277, 282 (Mo.App. 1982).

The party claiming rights as a third party beneficiary has the burden of showing that provisions in the contract were intended to be made for his direct benefit. *Mertens v. MGR Inc.*, 507 S.W.2d 433, 436 (Mo.App.1974). The necessary intent is not simply a desire to advance the interests of another but rather an intent that the promisor assume a direct obligation to the alleged third party beneficiary. *Volume Services, Inc.*, 656 S.W.2d at 794.

■ We first consider whether the bank was a creditor beneficiary of the agreement by the brokers to supply an insurance policy to the Gillans. The evidence showed that the Gillans executed two deeds of trust to the bank and each contained a printed paragraph whereunder the mortgagor agreed to keep the property insured with "[l]oss payable to third party [the bank] or his assigns as interest may appear." Although the form included a blank in which to insert the amount of insurance coverage required, figures were not inserted on either deed of trust. The bank officer testified that no specific amount of insurance was ever discussed with Gillan nor did they define what type or terms of coverage were to be obtained.

The deeds of trust executed by the Gillans obligated them to insure the property and to name the bank as loss payee "as interest may appear." That term signifies

only the equivalent of an open mortgage insurance clause which gives the mortgagee no broader insurance coverage than that extended to the mortgagor-policyholder. So long as the bank's interest was recognized by the St. Paul Company to be coequal with that of the Gillans, the obligations of the deed of trust were satisfied.

The bank claimed entitlement to an insurance policy with union mortgage clause coverage conforming to the previous Hartford policy, thereby avoiding the policy defense of arson as against the mortgagee. As between the bank and Gillan, however, the bank had obtained no agreement entitling it to require such a policy. Even had the omission been noted before the fire, Gillan was under no duty to supply coverage beyond that which the St. Paul policy provided. In the absence of a contractual obligation by Gillan to procure insurance with the broader coverage, the bank may not claim status as a creditor beneficiary. The Gillans did not assume to discharge any obligation owed to the bank when they contracted with the brokers, if they did, to supply a policy with a union mortgage clause coverage for the bank.

■ The next possibility is that the bank was a donee beneficiary of the agreement between the insurance brokers and the Gillans. Even though the bank was not able to require that the Gillans furnish a policy with the broader mortgagee coverage, if the Gillans ordered such a policy with the intention that the bank benefit from the superior insurance, the contract could arguably be one intended to be enforceable against the brokers by the bank. This avenue for recourse by the bank also fails, however, because the evidence does not show any intention on the part of the Gillans to confer any benefit on the bank in consequence of their agreement with the brokers regarding the insurance.

The evidence leads inescapably to the conclusion that John Gillan, the person with whom the insurance brokers dealt, was unaware of any difference between an open mortgage clause and a union mortgage clause. It therefore follows that Gillan could not have contracted for the re-

placement policy with any intention that a union mortgage clause be expressly a condition of the policy or that by so doing, he was conferring a special benefit on the bank enforceable against the brokers. While it is true that the Hartford policy provided the broader coverage, it also appears Gillan was unaware of this fact, being uninformed as to the difference between mortgage clauses. Moreover, Gillan testified he did not agree to obtain any particular insurance for the bank. There was no evidence to the contrary.

To recover as a donee beneficiary, it was necessary for the bank to prove that the order by Gillan to the insurance brokers for a replacement policy was made with the intent by Gillan that a union mortgage coverage be included and that the brokers assume a direct obligation to the bank to perform that undertaking. Quite obviously, there was no such proof and the bank therefore was unable to qualify as a third party donee beneficiary.

■ By the process of elimination, the evidence in this case establishes that the bank was, at most, an incidental beneficiary of the contract between Gillan and the insurance brokers to obtain a policy insuring the property covered by the two deeds of trust. An incidental beneficiary has no cause of action to recover for breach of the contract by which the anticipated benefit was to be derived. The trial court therefore erred when it failed to direct a verdict for the insurance brokers at the close of the evidence. *See Bandag of Springfield, Inc. v. Bandag, Inc.*, 662 S.W. 2d 546, 550 (Mo.App.1983).

This disposition of the case makes unnecessary any discussion of the numerous other points raised by appellant and cross-appellants.

The judgment is reversed. The cause is remanded with directions that the court enter judgment for defendants G. III Investments, doing business as Sparks Company, G.W. Sparks III and Freida Barbour and against plaintiff Farmers and Merchants Bank of Huntsville on plaintiff's petition and that the third party petition of G. III Investments, doing business as

Sparks Company, G.W. Sparks III and Freida Barbour be dismissed. Costs are assessed against Farmers and Merchants Bank.

All concur.