KANSAS CITY HISPANIC ASSOCIATION CONTRACTORS ENTERPRISE, INC. and Diaz Construction Company, Appellants,

v.

CITY OF KANSAS CITY, Missouri, et al., Respondents.

No. WD 69246.

Missouri Court of Appeals, Western District.

March 24, 2009.

---

Scott D. Hofer, Kansas City, MO, for appellant.

Steven E. Mauer, Christopher C. Javillonar, Kristi K, Wilhelmy, Allan V. Hallquist, Kansas City, MO, for respondent.

Before DIV II: SMART, P.J., HARDWICK and WELSH, JJ.

LISA WHITE HARDWICK, Judge.

Diaz Construction Company and the Kansas City Hispanic Association Contractors' Enterprise, Inc. ("KCHACE") appeal from the summary judgment ruling that denied their breach of contract and fraud claims against H & R Block, Inc., H & R Block Services, Inc. (collectively, "H & R Block"), and the Tax Increment Financing Commission of Kansas City ("TIF Commission"). For reasons explained herein, we affirm the circuit court's judgment.

FACTUAL AND PROCEDURAL HISTORY

This case arises from the financing and construction of the H & R Block World Headquarters Building ("project") in downtown Kansas City, Missouri. In May 2003, H & R Block executed a design/build agreement with J.E. Dunn Construction Company ("J.E. Dunn") to serve as primary contractor on the project. H & R Block obtained approval for public funding of the Project by tax increment financing and executed a "Development Agreement" with the City of Kansas City, Missouri ("City") in October 2004.

Tax increment financing is a development tool that uses future property taxes (as well as other taxes and fees) generated by the new development to pay some or all of the construction costs for public infrastructure and other improvements. In 1982, the City created the TIF Commission, as an arm of the Economic Development Commission ("EDC"), to manage tax increment financing initiatives. With regard to the world headquarters project, H & R purchased the land for the building from the City for $100, and the TIF Commission approved construction cost reimbursements of more than $292 million. As part of the Development Agreement, H & R Block agreed to comply with the TIF Commission's affirmative action policies and make good faith efforts to use minority contractors for 15% of the construction costs.

Diaz Construction is a Hispanic-owned commercial masonry contractor that has been certified by the City as a minority business enterprise ("MBE"). Diaz Construction is a member of KCHACE, an association established to promote the economic development of Hispanic construction contractors in the Kansas City area.

In January 2005, Diaz Construction submitted a bid for the concrete masonry scope of work on the H & R Block World Headquarters project. After the bidding closed, J.E. Dunn rejected all of the bids and solicited new bids on a broadened scope of masonry work to include concrete, vertical stone, and horizontal stone. Diaz Construction did not submit a new bid on the re-scoped work, part of which was ultimately performed by J.E. Dunn and was completed without minority contractor participation.

Diaz Construction and KCHACE filed a petition for damages[1] against the City, EDC, the TIF Commission, H & R Block, and J.E. Dunn. Their amended petition alleged breach of contract, tortious interference, civil conspiracy, and negligent and fraudulent misrepresentation claims against all defendants. The amended petition also alleged negligence claims against the City, EDC, and the TIF Commission. The parties filed cross-motions for summary judgment.

The circuit court granted summary judgment in favor of the defendants on all claims. The court denied all of the tort claims against the City, EDC, and the TIF Commission based on sovereign immunity. The court rejected the remaining claims against all defendants based on a finding that Diaz Construction and KCHACE lacked standing to sue as third-party beneficiaries of the Development Agreement between H & R Block and the TIF Commission. Diaz Construction and KCHACE appeal the summary judgment determination. The only issues on appeal involve the denial of the breach of contract and fraud claims against H & R Block, and the denial of the breach of contract claims against the TIF Commission.

---

1. Armando Diaz, the owner of Diaz Construction, also was a plaintiff in the underlying action. He has not appealed the judgment and, thus, we will not address his claims herein.

## STANDARD OF REVIEW

Our review of a summary judgment is essentially de novo. *ITT Commercial Finance v. Mid-America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom judgment was entered and give that party the benefit of all reasonable inferences from the record. *Id.* We will uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* A defendant may establish a right to judgment as a matter of law by showing that there is no genuine dispute as to the existence of each of the facts needed to support the movant's properly pleaded affirmative defense. *Id.* at 381.

## ANALYSIS

The circuit court granted summary judgment in favor of the TIF Commission and H & R Block based on its finding that Diaz Construction and KCHACE lacked standing to pursue the breach of contract and tort claims. The court concluded that Diaz Construction had no enforceable rights as a third-party beneficiary of the Development Agreement and that KCHACE lacked associational standing because its member, Diaz Construction, had no standing to sue in its own right. Appellants contend the court erred in granting summary judgment because the record demonstrates that Diaz Construction has standing to sue as a donee third-party beneficiary or, at a minimum, the record indicates a genuine factual dispute on that issue.

■ A third-party beneficiary is one who is not privy to a contract but *may* nonetheless pursue a cause of action for breach of contract. *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Co., L.P.*, 75 S.W.3d 247, 260 (Mo. banc 2002). The rights of a third-party beneficiary depend on the terms of the contract itself. *Id.* The beneficiary need not be named in the contract, but the terms of the agreement must clearly and directly express an intent to benefit an identifiable person or class. *Id.* A party claiming rights as a third-party beneficiary has the burden of showing that provisions in the contract were intended for his direct benefit. *Federal Deposit Ins. Corp. v. G. III Investments, Ltd.*, 761 S.W.2d 201, 204 (Mo.App.1988). The contract rights are only enforceable if the promisor assumed a direct obligation to the third-party beneficiary. *Id.*

■ There are three types of third-party beneficiaries: donee, creditor, and incidental. *Id.* Donee and creditor beneficiaries may maintain actions and recover under a contract, while incidental beneficiaries may not. *L.A.C.*, 75 S.W.3d at 260.

■ A donee third-party beneficiary exists when "the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary." *Id.* A creditor beneficiary is "one upon whom the promisee intends to confer the benefit of the performance of the promisee's contract with the promisor and thereby discharge an obligation or duty the promisee owes the beneficiary." *Federal Deposit Ins. Corp.*, 761 S.W.2d at 204. In contrast, an incidental beneficiary is one who will benefit from the performance of a promise but who is neither a promisee nor an intended beneficiary. *OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo.App.1995).

■ Diaz Construction contends that it acquired contractual rights as a donee third-party beneficiary of the Development Agreement between H & R Block and the

City. The primary purpose of the contract was for the City to convey the land and development rights for the world headquarters project based on tax increment financing. The terms of the contract required H & R Block to comply with the Affirmative Action Policy attached and set forth in paragraph 18 of the TIF Commission's Standard Development Agreement. The Policy specifically identified MBEs as "third party beneficiaries with respect to the enforcement and performance" of the goals for minority participation on TIF-assisted redevelopment projects. Based on this language, Diaz Construction argues that it was a direct beneficiary of the contract as an MBE and, therefore, had standing to enforce the terms of the Development Agreement against H & R Block and the TIF Commission.

However, as the circuit court observed, there is additional contractual language that eliminates any uncertainty as to whether MBEs acquire *enforceable* rights as third party beneficiaries under the Development Agreement. The remedy for any violation of the Affirmative Action Policy is clearly limited to H & R Block paying liquidated damages to the TIF Commission for the percentage of money that otherwise would have been spent on minority contractors. Section VI of the Affirmative Action Policy states:

> The Redeveloper [H & R Block] and TIFC acknowledge that MBEs and WBEs are third party beneficiaries to the Redevelopment Agreement with respect to compliance with this Policy. Because the amount of harm caused to MBEs and WBEs by the Redeveloper not exerting good faith efforts to meet the Utilization Goals set forth herein is uncertain, if not impossible, to determine, the Redeveloper agrees to pay to TIFC liquidated damages in an amount not to exceed the fees and expenses incurred by TIFC in investigating and determining that the Redeveloper has

not complied with this Policy; plus an amount equal to the percentage of the total amount of dollars spent in the Kansas City Metropolitan Area for Professional and/or Construction services that MBEs or WBEs would have otherwise received or money that otherwise would have been spent to employ minorities and women in the Workforce had the respective Utilization Goals set forth herein, been attained by the Redeveloper.

■ This provision indicates that the contracting parties did not intend to provide MBEs with third-party rights to sue for enforcement of the Development Agreement and the incorporated Affirmative Action Policy. Because H & R Block and the TIF Commission did not assume a direct obligation to MBEs, Diaz Construction was merely an incidental third-party beneficiary and had no standing to pursue damages or other relief for violations of the contract. KCHACE also lacked associational standing because its member, Diaz Construction, has no enforceable rights under the Development Agreement. There is no genuine issue of fact with regard to standing and, thus, the circuit court properly granted summary judgment in favor of H & R Block and the TIF Commission on the breach of contract claims.

Diaz Construction also challenges the grant of summary judgment on the fraud claim against H & R Block. Appellant contends the record demonstrates a material factual dispute as to whether H & R Block intentionally misrepresented that the concrete masonry scope of work would be awarded to Diaz Construction if it bid on the Project, when H & R Block actually intended to manipulate the process and allow J.E. Dunn to perform the work.

■ A prima facie case for intentional misrepresentation requires evidence show-

ing: "(1) the representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his/her ignorance of the truth; (5) the speaker's intent that his/her representation should be acted on by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and (9) the hearer's consequent and proximately-caused injuries." *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 689 (Mo.App. 1994).

▆▆▆▆▆▆ Diaz Construction's fraudulent misrepresentation claim is based on a conversation that allegedly occurred between its owner, Armando Diaz, and Marvin Carolina, an employee of J.E. Dunn, regarding the bid process for the world headquarters project. Diaz Construction contends that J.E. Dunn was the agent of H & R Block and, thus, any statements by Carolina as a J.E. Dunn employee are binding against H & R Block.[2] It further contends that Carolina falsely told Armando Diaz that Diaz Construction would be awarded the subcontract on the concrete masonry scope of work if it bid on the project, and that Diaz Construction relied on that false statement to its detriment. However, the record does not support these allegations.

H & R Block's summary judgment motion included citations to the following deposition testimony from Armando Diaz concerning the bid process:

Q: You were never told by anyone that Diaz Construction Company would be awarded a contract for work on the H & R Block world headquarters.

A: When we bid work we're never told we're going to be awarded a project, whether H & R Block or ABC project.

Q: No one told you or anyone employed by Diaz Construction that if you submitted a bid they would see that you got work on the H & R Block world headquarters?

A: I think to answer that I think suggestively when we met with Marvin Carolina he asked and said, we've got to get these percentages. Our whole corporate, you know, philosophy is changing within the organization here. You know, we really want you to take a look at H & R Block, and I think from the impression there was, yeah, we were going to work together on [the] H & R Block project.

This testimony does not establish that Carolina made any promises or statements guaranteeing that Diaz Construction would be awarded the subcontract if it submitted a bid. At best, the record indicates that Carolina made unspecified statements that left Armando Diaz with the impression or belief that his company would win the bid. Without a clear indication of the statements actually made by Carolina, Diaz Construction has failed to show the existence of a false representation. There is no material factual dispute on the first two elements of the fraud claim.

Diaz Construction also failed to show that it ultimately relied on the alleged misrepresentation and was thereby damaged. Although Diaz Construction initially submitted a bid on the world headquarters project, that bid was rejected, and the minority contractor was invited to submit a new bid on a revised scope of work. Diaz Construction declined that opportunity, admittedly because it thought J.E. Dunn was manipulating the bid process. This admission indicates that Diaz Construction knew any alleged statements by Carolina were

---

**2.** In light of our determination that there is no evidence of a false statement by Carolina, we need not address whether his conduct is attributable to H & R Block under an agency theory.

false, and that Diaz Construction did not take any further action to bid on the scope of work that was ultimately performed by J.E. Dunn. Without bidding on the job, Diaz Construction cannot demonstrate that it relied upon or suffered any damage from promises allegedly made by Carolina. H & R Block was entitled to summary judgment as a matter of law because Diaz Construction failed to present a genuine issue of fact on the seventh and ninth elements of its fraud claim.

CONCLUSION

We find no error in the summary judgment ruling in favor of H & R Block and the TIF Commission on the breach of contract and fraud claims. Diaz Construction and KCHACE failed to demonstrate that they had standing to sue on the breach of contract claims. Diaz Construction also failed to present evidence to establish key elements of its fraud claim against H & R Block. In light of these determinations, we need not address the additional points on appeal regarding the application of sovereign immunity and the extent to which H & R Block, Inc. could be held liable as the holding company of H & R Block Services, Inc.

We affirm the circuit court's judgment.

All Concur.