REALTY RESOURCE, INC.,
Plaintiff/Respondent,

v.

TRUE DOCUGRAPHICS, INC.,
Defendant/Cross–Claimant/Respondent,

v.

Bernadette Business Forms, Inc.,
Defendant/Cross–Claimant/Appellant.

No. ED 93031.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 27, 2010.

Rehearing Denied June 8, 2010.

Michael P. Stephens, Clayton, MO, for Plaintiff/Respondent.

Neil G. Beachem, St. Louis, MO, for Respondents/Cross–Appellant True Docugraphics, Inc., and Defendants Steven R. Truetkan, Personal Representative of the Estate of James R. Truetkan, Deceased; Roger T. Truetkan, Steve A. Truetkan, William L. Johnson, Donna L. Johnson and Edward C. Fronick.

Michael J. Sewell, Stephen M. Cohen, Clayton, MO, for Appellant/Cross Respondent Bernadette Business Forms, Inc.

Before SHERRI B. SULLIVAN, P.J., ROBERT G. DOWD, JR., and PATRICIA COHEN, JJ.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Bernadette Business Forms, Inc., f/k/a JPB Investments V, Inc. (BBF) appeals

from the summary judgment of the trial court entered in favor of Realty Resource, Inc. (Realty Resource) on Count III of Realty Resource's Second Amended Petition alleging breach of contract against BBF and in favor of True Docugraphics, Inc., f/k/a Bernadette Business Forms, Incorporated (TDI) on TDI's Cross–Claim against BBF for Indemnification. TDI appeals from the trial court's judgment awarding attorney's fees. We affirm in part and reverse and remand in part.

*Factual and Procedural Background*

On May 1, 2005, Realty Resource and TDI entered into a Listing Agreement. The Listing Agreement provided that Realty Resource would procure a sublessee for a portion of space at TDI's place of business at 8950 Pershall Road (Pershall Building), and would be paid a commission for doing so. Also, the Listing Agreement provided that if the sublessee renewed its lease, TDI would pay Realty Resource a commission for such renewal.

On December 27, 2005, Graham Packaging Company (Graham), as the sublessee, entered into a Sublease Agreement with TDI, as sublessor. On December 29, 2005, pursuant to the terms of the Listing Agreement, TDI paid Realty Resource a portion of the commission due for the initial term of the sublease. The terms of the Listing Agreement were reiterated in Article XIII of the Sublease Agreement, to-wit:

13.01 Sublessee and Sublessor and Owner hereby acknowledge that the following disclosures have been previously made and accepted: Realty Resource, Inc. is acting as Sublessor's Broker and is serving solely as agent for the Sublessor in connection with this transaction and shall receive, from Sublessor upon the execution hereof, a leasing commis-

sion in an amount equal to six percent (6%) of the gross lease payments payable in the Initial Term hereunder and upon execution of the Renewal Option by Sublessee, a leasing commission in an amount equal to six percent (6%) of the gross lease payments payable in the Renewal Term. Colliers Turley Martin Tucker is acting as Sublessee's Broker and is serving solely as agent for the Sublessee in connection with this transaction and shall receive forty-five percent (45%) of any leasing commission paid to Realty Resource, Inc. in connection with this Sublease and Sublessor shall cause Realty Resource, Inc. to pay such commission to Colliers Turley Martin Tucker. Sublessor and Sublesses [sic] agree to indemnify, defend and hold the other free and harmless from and against all claims for broker's commissions or finder's fees by any other person(s) claiming to have been retained by such party in connection with this transaction or to have caused this transaction.

On January 24, 2006, TDI entered into an Asset Purchase Agreement (Purchase Agreement) with BBF. The Purchase Agreement provided that the Sublease Agreement was among the contracts and obligations acquired by BBF through the Purchase Agreement. Accordingly, BBF, as the sublessor, received lease payments from Graham. On March 16, 2006, BBF, as sublessor, paid Realty Resource the remaining balance of the commission due for the initial term of the Sublease. On June 4, 2007, pursuant to the terms of the Sublease Agreement, Graham exercised its renewal option to remain in the Pershall Building after January 1, 2008. Graham remained in the Pershall Building, and made its lease payments to BBF during the renewal term. However, despite repeated demands by Realty Resource, both TDI and BBF refused to pay the 6% renewal commission due under the terms of the Sublease Agreement and the Listing Agreement.

On September 20, 2007, Realty Resource filed suit against TDI and BBF for the renewal commission. On July 28, 2008, Realty Resource filed a motion for summary judgment seeking recovery under the Listing Agreement against the prior sublessor, TDI, and, if TDI was determined to be insolvent, then against its Shareholders. Realty Resource also sought recovery as a third-party beneficiary under the Sublease Agreement against the current sublessor, BBF. In response to Realty Resource's motion for summary judgment, TDI claimed that it was solvent and that BBF owed the commission to Realty Resource because BBF assumed the Sublease under the Purchase Agreement. BBF argued that TDI owed the commission to Realty Resource because BBF had no such liability under the Sublease Agreement *and* BBF did not assume the terms of the Listing Agreement, and thus had no liability to Realty Resource under the Purchase Agreement.

On December 2, 2008, the trial court entered a Partial Judgment wherein it found that Realty Resource had performed its obligations under the Listing Agreement, but TDI had not. The trial court thus found TDI was liable to Realty Resource for the renewal commission in the amount of $27,950.20, plus 9% prejudgment interest from June 4, 2007, in the amount of $3,762.93, for a total judgment of $31,713.13, plus court costs. The trial court also found that Realty Resource was a third-party beneficiary to the Sublease Agreement, which BBF had expressly assumed under the Purchase Agreement, and, accordingly, BBF was jointly and severally liable to Realty Resource for the renewal commission in the amount above stated.

On January 22, 2009, the trial court held a hearing on the cross-motions for summary judgment between TDI and BBF wherein each argued that the other was liable to Realty Resource for the renewal commission under the terms of the Purchase Agreement. On February 19, 2009, the trial court entered its Amended and Final Judgment, expressly incorporating its Partial Judgment and amending it by further finding that (1) the sublessor was required to pay a renewal commission to Realty Resource under the Sublease Agreement; (2) under the Purchase Agreement between TDI and BBF, BBF had assumed the Sublease Agreement; (3) the sublessee had renewed the Sublease; (4) as successive sublessors, TDI and BBF were jointly and severally liable to pay the renewal commission to Realty Resource; and (5) under Article 8 of the Purchase Agreement, BBF was obligated to indemnify TDI against Realty Resource's claims; thus BBF was liable to TDI for any amount recovered by Realty Resource from TDI as well as any interest thereon, and $1,000.00 in legal fees. On May 14, 2009, the trial court certified the judgment as final for appeal. This appeal by BBF and cross-appeal by TDI follow.

## Points on Appeal

In its first point, BBF maintains that the trial court misapplied the law and erred in finding that Realty Resource is a third-party beneficiary to the Sublease Agreement that is the subject of this action and in thereby entering summary judgment against BBF, because the intent of the parties to a contract is paramount in determining whether a non-party to a contract is a third-party beneficiary of same, and the clear paramount intent of the parties to the Sublease Agreement was to provide a mutual benefit solely to them, not to Realty Resource.

In its second point, BBF declares that the trial court misapplied the law in ordering joint and several liability between BBF and TDI as to the Listing Agreement, because whether a party is jointly and severally liable on a contract depends on the intent of the parties to the contract, and BBF is not a party to the Listing Agreement, BBF did not assume the Listing Agreement, BBF never expressed an intent to be jointly and severally obligated on the Listing Agreement, and the trial court, more importantly, did not even enter judgment against BBF as to the Listing Agreement.

In its third point, BBF claims that the trial court misapplied the law and erred in finding that BBF is obligated to indemnify, defend and hold harmless TDI from and against the claims asserted by Realty Resource against TDI, because, pursuant to the Purchase Agreement, BBF is liable to TDI only for the liabilities of TDI assumed by BBF, and BBF assumed no obligation of TDI to pay the commission.

In its fourth point, BBF states that the trial court misapplied the law and erred in finding that BBF is liable to Realty Resource for prejudgment interest from June 4, 2007, because prejudgment interest on a contract accrues from the date on which demand for payment is made, and if none is made, then it accrues from the day on which suit is filed, and Realty Resource provided no evidence of the date on which it allegedly made such demand on BBF.

## Standard of Review

Our review of a summary judgment is essentially *de novo*. *Kansas City Hispanic Ass'n Contractors Enterprise, Inc. v. City of Kansas City*, 279 S.W.3d 551, 555 (Mo.App. W.D.2009). We view the record in the light most favorable to the party against whom judgment was entered and give that party the benefit of all reason-

able inferences from the record. *Id.* We will uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* A defendant may establish a right to judgment as a matter of law by showing that there is no genuine dispute as to the existence of each of the facts needed to support the movant's properly pleaded affirmative defense. *Id.*

## Discussion

### Points I and II

### Third–Party Beneficiary and Indemnity

These two points can be discussed together, as they both hinge on whether BBF assumed the obligation to pay Realty Resource's commission.

The Purchase Agreement entered into between BBF and TDI provided that the Sublease Agreement, which includes the commission due Realty Resource, was among the contracts and obligations assumed by BBF. BBF acted accordingly in the following ways. BBF, as the sublessor, *accepted* lease payments from Graham, as the sublessee. Furthermore, BBF, as the sublessor, *paid* Realty Resource the remaining balance of the commission due for the initial term of the Sublease Agreement. These actions are contradictory to the posture BBF takes in this litigation.

Schedule 1.1(e), entitled "Assumed Contracts," attached to the Purchase Agreement, specifically lists Graham's premises lease with renewal option. The plain language of the Sublease Agreement obligates the sublessor, BBF, to pay the renewal commission to Realty Resource. Article XIII states that Realty Resource "shall receive, from Sublessor ... upon execution of the Renewal Option ... a leasing commission in an amount equal to six percent (6%) of the gross lease payments payable in the Renewal Term." Pursuant to the terms of the Purchase Agreement, BBF is the sublessor.

In its judgment, the trial court found that Realty Resource was a third-party beneficiary of the Sublease Agreement, and therefore was entitled to direct Count III of its petition against BBF for payment of its commission, even though Realty Resource was not privy to the Sublease Agreement. BBF claims this finding was error, as the clear paramount intent of the parties to the Sublease Agreement was to provide a mutual benefit solely to them, not to Realty Resource.

A third-party beneficiary is one who is not privy to a contract or its consideration but who nonetheless may maintain a cause of action for breach of the contract. *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo.banc 1993). A creditor beneficiary is "one upon whom the promisee intends to confer the benefit of the performance of the contract and thereby discharge an obligation or duty the promisee owes the beneficiary." *OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo.App. W.D.1995). "A person is a creditor beneficiary if the performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary." *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Co., L.P.*, 75 S.W.3d 247, 260 (Mo.banc 2002). "It must be shown that the benefit to the third party was the cause of the creation of the contract." *OFW Corp.*, 893 S.W.2d at 879. "Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action." *Id.*

Here, it is clear from the terms of the Sublease Agreement that it creates a right in Realty Resource to receive payment upon Graham's renewal of the Sub-

lease Agreement. Graham, as sublessee, is making payments to BBF, as sublessor, based upon its renewal of the lease. Accordingly, Realty Resource is entitled to its commission as a third-party beneficiary. It was Realty Resource that brought Graham to the table as a sublessee to execute the Sublease Agreement with TDI as sublessor. Clearly this was performed by Realty Resource with the intent of earning the commission. The benefit to Realty Resource "was the cause of the creation of the contract." *OFW Corp.*, 893 S.W.2d at 879.

BBF also argues in its third point that the trial court erred in finding it had to indemnify TDI for the commission because BBF assumed no obligation of TDI to pay the commission. This argument is without merit. Article 8 of the Purchase Agreement states:

Without limiting any other remedies contained in this Agreement, Purchaser agrees to *indemnify, defend and hold harmless* the Seller and each of the Shareholders, officers, directors, agents and representatives, and each of the heirs, executors, successors and assigns of any of the foregoing (collectively, the "Seller Indemnified Parties") from and against and in respect of any and all *claims, liabilities, obligations, losses, costs, expenses,* penalties, fines and judgments (at equity or at law, including statutory and common law) and damages whenever arising or incurred (including, without limitation, amounts paid in settlement, costs of investigation and reasonable attorney's fees and expenses) *arising out of or relating to: (a) any of the Assumed Liabilities from and after the Closing Date; (b) any other liability or obligation relating to the conduct of the Business or ownership of the Purchased Assets after the Closing Date* other than the Excluded Liabilities....

For the reasons above stated, BBF did assume the obligation to pay the commission to Realty Resource and, therefore, the trial court did not err in finding that BBF has a duty to indemnify TDI pursuant to the clear indemnification clause set forth in Article 8 of the Purchase Agreement.

For the foregoing reasons, Points I and III are denied.

### Point III

#### Joint and Several Liability

In its second point on appeal, BBF maintains that the trial court erred in finding joint and several liability between BBF and TDI as to the Listing Agreement, because BBF was not a party to the Listing Agreement. However, the trial court did not make such a finding. Rather, it found that BBF and TDI had joint and several liability under the Sublease Agreement, which is clearly established by the language therein, and which BBF does not dispute in this point. Accordingly, Point II is denied.

### Point IV

#### Prejudgment Interest

In its fourth point, BBF claims that the trial court erred in finding that BBF is liable to Realty Resource for prejudgment interest from June 4, 2007, because prejudgment interest on a contract accrues from the date on which demand for payment is made, and if none is made, then it accrues from the day on which suit is filed, and Realty Resource provided no evidence of the date on which it allegedly made such demand on BBF, but simply states in its pleadings it is entitled to prejudgment interest from June 4, 2007, and that Graham exercised its renewal of the Sublease on June 4, 2007. BBF maintains that since Realty Resource filed this action on August 15, 2008, such date is the one on

which prejudgment interest should begin to accrue.

■ This point is not preserved for our review, as BBF did not raise it at the trial court level. Therefore we review for plain error only.

■■ In actions for breach of contract, interest ordinarily runs from the date of the breach or the time when payment was due under the contract. *Wulfing v. Kansas City Southern Industries, Inc.*, 842 S.W.2d 133, 160 (Mo.App. W.D.1992). The plaintiff in *Wulfing* made the same argument as BBF does here, which we reject for the same reasons as did our Western District colleagues:

> Section 408.020 [1] grants to a creditor interest ... when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made ... The premise that in a claim for money damages for breach of a written contract, demand upon the contractee initiates accrual of prejudgment interest is found in neither Section 408.020 nor in our authoritative decisions.

*Id.* at 160–61.

Section 408.020 provides:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an ex-

press promise to pay interest has been made.

In this case, Article XIII of the Sublease Agreement provides that the commission "shall" be received by Realty Resource "upon execution of the Renewal Option by the Sublessee." Article II of the Sublease Agreement states that "[t]o exercise the Renewal Option, Sublessee shall provide Sublessor with written notice of such renewal on or before July 1, 2007." Graham provided written notice of its execution of the renewal option on June 4, 2007. Accordingly, the trial court did not err in ordering prejudgment interest to accrue from the date of June 4, 2007.

For the foregoing reasons, Point IV is denied.

### Points on Cross–Appeal

In its first point, TDI asserts that the trial court abused its discretion when it entered an award of attorney's fees in its favor in the amount of $1,000.00, without considering any evidence of the attorney's fees it incurred in the case.

In its second point, TDI argues that it is entitled to recover its attorney's fees incurred from the date the trial court entered judgment in its favor on its cross-claim through the conclusion of this appeal.

### Standard of Review

■ The determination of reasonable attorney's fees is in the sound discretion of the trial court. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 877 (Mo.App. E.D.2009). This determination shall not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration. *Id.* at 877–78. The trial court is consid-

---

**1.** All statutory references are to RSMo 2006, unless otherwise indicated.

ered an expert on the issue of attorney's fees such that, in the absence of a contrary showing, the trial court is presumed to know the character of the attorney's services rendered in duration, zeal, and ability. *Id.* at 878.

### Discussion

### Point I

*Attorney's Fees, Trial*

In the instant case, the trial court awarded TDI $1,000.00 in attorney's fees in its judgment. The record is devoid of evidence upon which this award was based.

■■ Upon receipt of the judgment, TDI filed a post-trial motion to amend the judgment asking the trial court to reconsider its award of attorney's fees, because TDI had not been accorded the opportunity to submit evidence of those fees. However, the trial judge who had tried this case had moved to another division, and therefore a visiting judge heard and denied the motion without considering TDI's evidence.

A party seeking attorney's fees on appeal must show the extent of the necessary services to be rendered by counsel, and the expenses related thereto, so that the trial court may make an award based on evidence of such services and expenses. This also gives the appellate court evidence to examine, in connection with other relevant circumstances, in gauging the propriety of the trial court's discretionary actions.

*Hihn v. Hihn,* 237 S.W.3d 607, 609 (Mo. App. E.D.2007).

Because none of the evidence of TDI's claimed attorney's fees was considered by the trial court, this Court cannot consider same. Thus, we have no evidence to examine to gauge the propriety of the trial court's discretionary actions in determining the amount of the award. However, we do find that the failure of the trial court to receive and consider evidence of TDI's attorney's fees indicates a lack of careful consideration of the time and effort TDI spent preparing for and defending this litigation spanning several years, and suggests that the award of $1,000.00 in attorney's fees was unreasonable and arbitrary. See *Trout v. State,* 269 S.W.3d 484, 489 (Mo.App. W.D.2008).

■■ We cannot affirm an award of attorney's fees on appeal unless it is supported by substantial evidence. *In re Marriage of Crow,* 103 S.W.3d 778, 783 (Mo.banc 2003). Here, it is not. Accordingly, we reverse the $1,000.00 award and remand for reception and consideration of TDI's evidence of attorney's fees. See *Hills v. Greenfield Village Homes Ass'n, Inc.,* 956 S.W.2d 344, 350 (Mo.App. W.D. 1997) (reversed and remanded because record inadequate to determine on appeal the issue raised by appellant as to an award of attorney's fees). TDI's first point on appeal is granted.

### Point II

*Attorney's Fees, Appeal*

As hereinbefore noted, Article 8 of the Purchase Agreement provides for indemnification. In pertinent part it provides that:

Purchaser agrees to indemnify ... against .... any and all claims ... costs, expenses, penalties, fines and judgments ... including, without limitation, amounts paid in settlement, costs of investigation and *reasonable attorney's fees and expenses* ....

Based on this provision, TDI is entitled to recover its attorney's fees incurred in defending BBF's appeal, if TDI prevails. Point II of TDI's appeal is therefore granted.

## Conclusion

The judgment of the trial court is reversed to the extent of its award of attorney's fees to TDI; remanded for determination of same as well as of attorney's fees incurred by TDI on appeal; and affirmed in all other respects consistent with this opinion.[2]

ROBERT G. DOWD, JR. and PATRICIA L. COHEN, JJ., concur.

**2.** BBF's Motion to Strike TDI's Reply is denied. TDI's Motion for Attorney's Fees is denied, as the issues raised within it are duplicative of the issues presented in its points on cross-appeal, and have already been addressed by this Court in this opinion. TDI's Motion is denied for the further reason that it presents evidence to this Court that was not before the trial court. BBF's Motion to Strike TDI's Motion for Attorney's Fees is denied as moot.