

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **B&G LAND DEVELOPMENT, LLC,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **v.** | ) | **WD85866** |
| | ) | |
| **JACKSON COUNTY PUBLIC WATER** | ) | |
| **SUPPLY DISTRICT #17,** | ) | **Filed: November 14, 2023** |
| | ) | |
| **Respondent.** | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE MARCO A. ROLDAN, JUDGE

### BEFORE DIVISION THREE: LISA WHITE HARDWICK, PRESIDING JUDGE, KAREN KING MITCHELL, JUDGE, CYNTHIA L. MARTIN, JUDGE

B&G Land Development, L.L.C. ("B&G") appeals the circuit court's judgment denying its petition for detachment from Public Water Supply District No. 17 of Jackson County ("District"). B&G contends the circuit court erred in: (1) finding that the District is entitled to protection under 7 U.S.C. § 1926(b); (2) failing to declare an agreement to purchase water from the City of Oak Grove void ab initio because it did not comply with

Section 247.172;[1] and (3) finding that detachment would adversely affect the District. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In 1971, the District was formed pursuant to Chapter 247 of the Missouri Revised Statutes as a public water supply district to supply potable water to Eastern Jackson County. The District has the exclusive right to provide water service to residents within its geographical boundaries. The District serves approximately 1,007 customers and qualifies as a "rural water district" for purposes of receiving federal loans pursuant to 7 U.S.C. § 1926(b).

In 1999, B&G and Midwest National Holdings, L.L.C. ("Midwest") purchased neighboring properties in an unincorporated area of Jackson County to develop a multi-phase residential subdivision consisting of nearly 600 homes. These properties are located within the Eastern Jackson County area covered by the District.

Between 2002 and 2005, the City of Oak Grove annexed the unincorporated territory where the B&G and Midwest properties were located. The City of Oak Grove installed the water lines that provide water service to the annexed territory, notwithstanding the fact that the area is located within the District.

In 2010, the District obtained a loan from the United States Department of Agriculture ("USDA") to finance water services in the rural water district. The District is

---

[1] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2020 Cumulative Supplement, unless otherwise stated.

obligated to make $1,947 in monthly payments to cover principal and interest on the loan until 2045. The balance due from the District to the USDA on the loan is $330,000.

In 2018, pursuant to Section 247.050, the District entered into an agreement with the City of Oak Grove to provide water service to the annexed area that was located within the District. Section 247.050 confers upon public water supply districts organized under the provisions of Sections 247.010 to 247.220 the power to sell and distribute water to the inhabitants within the district.

In 2021, B&G and Midwest filed a petition for detachment of the annexed area from the District in order to pay lower tap fees and retain more favorable terms through water service from the City of Oak Grove.[2] In the petition, B&G and Midwest argued that the water service contract between the City of Oak Grove and the District was void.

In its answer, the District raised Section 1926(b) as an affirmative defense prohibiting detachment because it is indebted to the federal government on loans in excess of $25,000. The District also filed a motion in limine to exclude evidence regarding its agreement with the City of Oak Grove. In the motion, the District argued that B&G and Midwest were not privy to the contract and lacked standing to challenge it. The City of Oak Grove was not a party to the lawsuit. The court denied the motion in limine but allowed the District a continuing objection on evidence related to its agreement with the City of Oak Grove.

---

[2] The tap fee for the City of Oak Grove is less than the District's standard tap fee of $4,200.00.

At the hearing on the petition for detachment, Steve Bailey, a developer and owner of B&G, testified that the area sought to be detached overlapped the City of Oak Grove and the District's territories. Bailey testified that B&G requested water service in 2005. He testified that a water line, located on Stillhouse Road just north of his portion of the area sought to be detached, provided residential water service. Bailey also testified that B&G's motivating factor for seeking detachment was to pay a lower tap fee.

Luke White, the vice president of development for Midwest, testified that Midwest sought detachment to pay lower tap fees. He testified that the water line at Stillhouse Road, bordering the west side of his portion of the area sought to be detached, provided residential water service. He also testified that the development on the area sought to be detached is not yet complete.

Jason Herman, the superintendent, treasurer, and records custodian for the District, testified that the District had not received a request from Midwest or B&G for water service. Herman testified that the water infrastructure servicing the area sought to be detached belonged to the District. According to Herman, the District could easily serve the area sought to be detached.

Following the hearing, the court entered judgment denying the petition for detachment. The court found that the District had the financial ability to provide service to the area sought to be detached and the means to install the infrastructure in a reasonably timely manner. The court also found that the District was entitled to Section 1926(b) protection because it is indebted to the federal government and is capable of

4

servicing the area sought to be detached. B&G appeals the judgment denying its petition for detachment.[3]

## STANDARD OF REVIEW

In a court-tried case, we affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Weber v. Moerschel*, 313 S.W.3d 220, 223 (Mo. App. 2010). We view the evidence and inferences from the evidence in the light most favorable to the circuit court's judgment, disregarding all contrary evidence and inferences. *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009). We defer to the circuit court's factual resolutions and determinations as to witness credibility. *Id.* We review questions of law *de novo*. *City of St. Joseph v. Vill. of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005).

## PROTECTION UNDER 7 U.S.C. § 1926(b)

In Point I, B&G challenges the circuit court's finding that the District is entitled to protection from detachment by Section 1926(b). The Consolidated Farm and Rural Development Act authorizes the USDA to issue loans to associations, including rural water districts, as financing for water service. 7 U.S.C. § 1926(a)(1). The purpose "of the federal loans made to water district associations is to supply potable water to farmers

---

[3] Midwest did not appeal the judgment and is not a party to this appeal.

5

and ranchers." *Robertson Properties, Inc. v. Detachment of Territory from Pub. Water Supply Dist. No. 8 of Clay Cnty.*, 153 S.W.3d 320, 326 (Mo. App. 2005).

7 U.S.C. § 1926(b) states:

> The service provided or made available through any [indebted rural water district] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan[.]

"Section 1926(b) sets out a congressional mandate that local governments not be allowed to encroach upon, curtail, or limit the drinking water services provided by [a rural water district] that is indebted to the federal government." *Id.* at 327. "By enacting § 1926(b), Congress intended to protect rural water districts from competition to encourage rural water development and to provide greater security for and thereby increase the likelihood of repayment of [USDA] loans." *Rural Water Dist. No. 1 v. City of Wilson*, 243 F.3d 1263, 1269 (10th Cir. 2001). Accordingly, the protections apply regardless of whether it is a municipality, individual, or private supplier who brings the underlying suit. *Robertson Properties, Inc.*, 153 S.W.3d at 324.

"To qualify for [§ 1926(b)] protection, an entity must: (1) be an 'association' under the statute, (2) have a qualifying federal loan, and (3) have provided or made service available to the disputed area." *Pub. Water Supply Dist. No. 3 of Laclede Cnty., Mo. v. City of Lebanon, Mo.*, 605 F.3d 511 (8th Cir. 2010). "Doubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the indebted party seeking protection for its territory." *Deer Creek Water Corp. v. City of Oklahoma City*, 82 F.4th 972, 980 (10th Cir. 2023).

6

B&G concedes that the District is an association under the statute with a qualifying federal loan. However, B&G contends the circuit court erred in finding that the District is entitled to Section 1926(b) protection because the District failed to provide or make service available to the territories in the time and manner required by the statute.

The "made service available" prong is satisfied by establishing that a water district has "(1) the physical ability to serve an area; and (2) the legal right to serve an area." *City of Lebanon, Mo.*, 605 F.3d at 521. B&G concedes that the District has the legal right to serve the area sought to be detached. In challenging the District's physical ability to serve the area sought to be detached, B&G relies on the "pipes in the ground" test used in water cases that this court adopted in *Robertson Properties, Inc.*, 153 S.W.3d at 327-28.

In *Robertson*, a developer of residential real estate purchased undeveloped land and made an agreement with a municipality to annex the land and provide it water service. *Id.* at 324. Pursuant to the agreement to provide water service, the municipality obtained easements and laid pipes from its main water line to service the development. *Id.* Neither the developer nor the municipality knew that part of the annexed land was within a rural water district's territory until after development ensued. *Id.* The developer sought to detach the overlapping portion of his land that was within the rural water district's territory and had been annexed into a municipality a year prior. *Id.* at 323. Applying state detachment law, the circuit court granted detachment after finding that the water district had not supplied water to the overlapping area, lacked sufficient water mains to immediately provide service, and the developer never received assurance that

7

service would be provided after later requesting it from the rural water district.[4] *Id.* at 324.

On appeal, we reversed and remanded the case to the circuit court to make Section 1926(b) findings, including a determination of whether the water district was reasonably capable of providing service at the request of the developer. *Id.* at 328 and 330. We explained that, even where service has not been provided to an area, a rural water district may claim Section 1926(b) protection "by demonstrating an ability to provide service, in that it has water lines and adequate facilities in or adjacent to the disputed area, within a reasonable time after a request for service has been made." *Id.* at 327. We held that the "ability to provide drinking water service can be shown by evidence that there are 'pipes in the ground' in or adjacent to the disputed area with which it can serve the disputed customers within a reasonable time after a request for service is made." *Id.* at 327-28.

Here, it is undisputed that B&G purchased undeveloped land within the District's territory that was later annexed into the City of Oak Grove. However, B&G misinterprets the 'pipes in the ground' test to mean facilities already in existence, arguing that the District's existing water line located three-fourths of a mile away at Stillhouse Road is neither within nor adjacent to the area sought to be detached.

---

[4] By skipping the federal analysis, the circuit court erroneously made extensive findings that detachment would be easier and cheaper for the developer under state detachment law. *Robertson Properties, Inc.*, 153 S.W.3d at 327-28. A court need not perform an analysis for detachment under state law if it finds the rural water district is entitled to 7 U.S.C. § 1926(b) protections because federal law takes precedence. *Id.* at 330.

We clarified the "pipes in the ground" test in the second *Robertson* appeal. *In re Detachment of Territory from Pub. Water Supply Dist. No. 8 of Clay Cnty.*, 210 S.W.3d 246, 250 (Mo. App. 2006). We explained the test "is essentially an inquiry into whether a water association has the capacity to provide water service to a given customer." *Id.* at 250 (citation omitted). In protecting a rural water district from municipal encroachments, we also explained "Section 1926(b) is to be liberally interpreted . . . and evidentiary uncertainties should be resolved in favor of the party seeking to protect its territory." *Id.* (internal quotation marks and citation omitted). As referenced in the second appeal, the circuit court found the rural water district lacked "adequate facilities within sufficient proximity to the subject property within a reasonable time after a demand for service was made" because the pipes near the disputed area were not large enough to provide potable water to the disputed area. *Id.* (citing *Bell Arthur Water Corp. v. Greenville Utilities Comm'n*, 972 F. Supp. 951, 962 (E.D.N.C. 1997), aff'd, 173 F.3d 517 (4th Cir. 1999)). Where existing water lines are insufficient to provide water service to the disputed area, a rural water district may demonstrate it has "sufficient funds on hand" and funding to construct the line. *Bell Arthur Water Corp.*, 972 F. Supp. at 962.

Here, the circuit court found that the District is capable of installing the pipes and infrastructure needed to serve the property in a reasonably timely manner. The court found the District has easements adjacent to the property sought to be detached and condemnation power to obtain further easements to serve the area. The record shows that the District has $799,522 in cash on hand to install the infrastructure needed to serve the area sought to be detached. Herman testified that the cost of installation to serve the area

9

sought to be detached is approximately $350,000. He also testified that if a request was made, the District could easily install the three-fourths of a mile of pipe to service the area.[5]

Additionally, the record shows that B&G knew of the existing water line installed along Stillhouse Road near its property. Bailey testified that the water line at Stillhouse Road served a few houses west of B&G's property. Bailey also admitted that the District was under contract with the City of Oak Grove to provide water service to the area sought to be detached. Herman testified that the water lines and infrastructure serving the property sought to be detached belonged to the District.

Despite Bailey's testimony that he never made a request for service nor saw a copy of such a request, the circuit court found that B&G last requested service for the area in 2005. Bailey testified that construction plans for water lines to B&G's property were approved by the City of Oak Grove within the last couple of years. Herman testified that the District did not have a design to supply water to area sought to be detached because no request has been made. The pipes in the ground analysis applies after a request for water service has been made. *Robertson Properties, Inc.*, 153 S.W.3d at 327. Accordingly, we agree with the circuit court's conclusion that, should B&G make a request for water service, the District has the financial ability to serve the area sought to

---

[5] B&G argues in its brief that the delayed construction of the water infrastructure as a result of litigation shows the District is incapable of making services available. This precise argument was rejected in *Deer Creek Water Corporation v. City of Oklahoma*, 82 F.4th 972, 983 (10th Cir. 2023). The court found services are made available when litigation, rather than a water company's inaction, causes the delayed implementation of necessary improvements for water service to a development.

be detached. The evidence supports the circuit court's finding that the District is entitled to the protection of Section 1926(b) because the District has the capacity to make services available. Point I is denied.

### DISTRICT'S AGREEMENT WITH THE CITY OF OAK GROVE

In Point II, B&G contends the circuit court erred by failing to declare the agreement between the District and the City of Oak Grove void ab initio because the agreement was required to be approved by the Missouri Public Service Commission pursuant to Section 247.172. B&G raises this point as an alternative to Point I, arguing that, without the agreement to supply water between the District and the City of Oak Grove, the District has not made water service available to the area sought to be detached.[6] We first address B&G's standing to challenge the contract. We review the question of standing *de novo*. *Columbia Sussex Corp. v. Missouri Gaming Comm'n*, 197 S.W.3d 137, 140 (Mo. App. 2006). "Standing is a jurisdictional matter antecedent to the right to relief." *Id.* "If a party is without standing to bring a particular claim, a court shall dismiss the claim because the court lacks the authority to decide the merits of the claim." *Weber v. St. Louis Cnty.*, 342 S.W.3d 318, 323 (Mo. banc 2011).

The party must have a "legally protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Id.* "A legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *Id.* "Missouri requires that a complainant be

---

[6] The circuit court did not make findings regarding the contract between the City of Oak Grove and the District.

11

within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question to bring an action thereunder." *Id.* "A plaintiff must show a personal stake in the outcome of the controversy and allege some threatened or actual injury resulting from the putatively illegal action." *Id.* (internal quotation marks and citation omitted).

A third-party beneficiary is one who is not privy to a contract but may nonetheless pursue a cause of action. *Kansas City Hisp. Ass'n Contractors Enter., Inc. v. City of Kansas City*, 279 S.W.3d 551, 555 (Mo. Ct. App. 2009). The rights of a third-party beneficiary depend on the terms of the contract itself. *Id.* The beneficiary need not be named in the contract, but the terms of the agreement must clearly and directly express an intent to benefit an identifiable person or class. *Id.* A party claiming rights as a third-party beneficiary has the burden of showing that provisions in the contract were intended for his direct benefit. *Id.* The contract rights are only enforceable if the promisor assumed a direct obligation to the third-party beneficiary. *Id.*

There are three types of third-party beneficiaries: donee, creditor, and incidental. *Id.* An incidental beneficiary is one who will benefit from the performance of a promise but who is neither a promisee nor an intended beneficiary. *Id.* Incidental beneficiaries may not maintain or recover actions under a contract. *Id.*

The purpose of Section 247.172 is to provide a procedure to resolve written territorial agreements for the sale and distribution of water "as between and among public water supply districts, water corporations subject to public service commission

12

jurisdiction, and municipally owned utilities" that may be displaced by such agreements. § 247.172.1.

The record shows B&G alleged in its petition that the agreement was void as a matter of law but made no specific request for declaratory relief. B&G has no legal right to challenge the agreement because it is not engaged in the business of supplying water. B&G made no showing that any provision of the contract was intended for its benefit. Furthermore, the purpose for which B&G seeks detachment is to pay lower tap fees. The record shows no harm to B&G, as other districts charge similar or higher tap fees and B&G can include tap expenses in residential sales. B&G fails meet its burden establishing that it may maintain an action for declaratory judgment against the District. *Id.*

Because B&G lacked standing to contest the contract between the District and the City, we have no authority to decide the merits of its claim. *Weber*, 342 S.W.3d at 323. Point II is denied.

### EFFECT OF DETACHMENT ON THE DISTRICT

In Point III, B&G argues that, because the District is not entitled to Section 1926(b) protection, the circuit court erred in failing to find that B&G met the criteria for detachment under Section 247.031. Section 1926(b) "takes precedence over state detachment law." *Robertson Properties, Inc.*, 153 S.W.3d at 326. "If the court concludes the federal act protects the district, the inquiry is at an end and no detachment may be had." *Id.* at 328. Because we find the District is protected under Section 1926(b), we need not decide the state law claim. Point III is denied.

13

## CONCLUSION

The judgment denying B&G's petition for detachment is affirmed.

_____

LISA WHITE HARDWICK, JUDGE

All Concur.

14