PER CURIAM
Brentwood Glass Company, Inc., appeals the circuit court’s judgment in favor' of defendants on two claims: its mechanic’s lien claim for unpaid work on a construction project and its claim that St. Louis County failed to require a public works construction bond mandated by section 107.170.[1] This Court granted transfer- after opinion by the court of appeals. Mo. Const, art. V, sec. 10.
The defendants were not entitled to summary judgment on Brentwood Glass’s mechanic’s lien claim against Cornerstone VI, LLC. While a mechanic’s lien may not attach to a building, land, or improvements owned by a public entity, Brentwood Glass may bring its mechanic’s lien claim against Cornerstone’s leasehold interest. Additionally, genuine issues of material fact exist regarding whether the lien notice was timely and whether the hen statement provided a just and true account of the demand due. As to Brentwood Glass’s bond claim against the County, judgment was proper because Cornerstone was not a “contractor” under section 107.170.1(1). Furthermore, Brentwood Glass did not name a party against whom it could recover on its bond claim.
Accordingly, judgment on Brentwood Glass’s mechanic’s lien claim is reversed as to Cornerstone. In -all other respects, the judgment is affirmed. The cause is remanded.
Factual and Procedural Background
The St. Louis County council adopted a resolution expressing its intent to issue industrial revenue bonds to finance the County’s purchase and development of a property known as Six City.Placé Drive. The County planned to develop the property for the headquarters of Smurfit-Stone Container Enterprises, Inc. The resolution authorized two companies, Smurfit-Stone and Cornerstone, to proceed with the “purchase, construction and equipping” of the development, “including the.entering into of contracts,” and expressed the County’s intent to lease the property to Smurfit-Stone and Cornerstone.
The County ultimately passed an ordinance finalizing the comprehensive plan to finance;and develop the property. As part of the plan, the County was to issue industrial revenue bonds to finance the project, upon which only Cornerstone could draw. Cornerstone and the County also executed a “Lease Agreement.” The agreement provided for more than a lease and, therefore, will be,referred to as a “contract.”
The contract required Cornerstone to construct the project “on behalf of the County” and authorized Cornerstone to act “as the agent of the County.” As the County’s agent, the contract required Cornerstone to “promptly notify the County of the imposition of [a mechanic’s] lien of which the Company is aware[.]” Cornerstone deeded the property to St. Louis County; on the same day, the County issued the industrial revenue bonds to finance the project.
Clayco, Inc., the general contractor for the project, subsequently entered into a subcontract with Pal’s Glass to supply glass and glazing work. Pal’s Glass, in turn, entered into a sub-sub-contract with Brentwood Glass for some of this work. Neither Cornerstone nor any contractor .working on the project obtained a bond that would comply with section 107.170.2.
*300 Pal’s Glass initially agreed to pay Brent-wood Glass a firm, fixed price for the labor and material. Any changes to the sub-subcontract were required to be made by a change order in writing by the subcontractor. Pal’s Glass and Brentwood Glass revised the contract via change order once. Other change orders, however, were proposed but not executed. Brentwood Glass performed extra work not reflected in the sub-subcontract price or a change order.
Brentwood Glass was not paid for any work done after January 12, ■ 2007, but presented evidence that it continued to work on the project after this date. On July 27, 2007, Brentwood Glass served notice of its intent to file a mechanic’s lien. The noticé was served on Cornerstone, not the County. Having still not received payment, Brentwood Glass filed its mechanic’s lien. The lien listed Cornerstone as the owner of the property and claimed $1,061,464.08 in unpaid work. .
Brentwood Glass then filed a nine-count petition against Pal’s Glass, Clayco, Cornerstone, the County, UMB Bank, National City Bank of the Midwest, Paul M. Macon, and Victor Zarilli.[2] In Count I, Brentwood Glass asserted a breach of contract claim against Pal’s Glass. In count VIII, Brentwood Glass asserted a mechanic’s lien claim against all defendants. In count IX, Brentwood Glass asserted an action against the County for allegedly failing to require a payment bond pursuant to section 107.170. Pal’s Glass admitted to owing $593,261.47 and consented to a judgment against it for that amount and costs.
The defendants filed a motion for summary judgment on the mechanic’s lien claim. The County also asserted it was entitled to summary judgment on the bond claim because section 107.170 did not apply. The circuit court entered judgment in favor of the defendants. Brentwood Glass appeals.[3]
Standard of Review
On appeal, an appellate court reviews summary judgment de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo.banc 1993). Summary judgment is proper when the movant “show[s] a right to judgment flowing from facts about which there is no genuine dispute.” Id. at 378. A genuine dispute exists when “the issue, or dispute, [is] a real and substantial one—one consisting not merely of conjecture, theory and possibilities.” Id. Evidence in the record is viewed “in the light most favorable to the party against whom judgment was entered” with “the benefit of all reasonable inferences from the record.” Id. at 376.
Analysis
I
A mechanic’s lien is an equitable remedy with “the purpose of giving security to mechanics and material[men] for labor and materials furnished in improving the owner’s property.” Bob DeGeorge Assocs., Inc. v. Hawthorn Bank, 377 S.W.3d 592, 598 (Mo.banc 2012) (internal quotations omitted). As such, “the provisions of the mechanics’ lien law should be interpreted so as to carry out the object ... *301 [of] the security of the classes, of persons named in the act, upon its provisions being in good faith substantially complied with on their part.” Putnam v. Ross, 46 Mo. 337, 338 (Mo.1870). “As a general rule, statutes relating to mechanic’s liens should be liberally construed in favor of lien enforceability.” State ex rel. Springfield, Underground, Inc. v. Sweeney, 102 S.W.3d 7, 9 (Mo.banc 2003).
The mechanic’s lien filed by Brentwood Glass does not specify whether it is seeking a lien against the County’s freehold property interest or against Cornerstone’s leasehold interest. But the mechanic’s lien statutes do not require such designation.
A
Under section 429.010, RSMo Supp. 2005, a mechanic’s lien may be brought against an owner’s freehold interest in property:
[a]ny person who shall do or perform any work or labor ... or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land ... under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, trustee, contractor or subcontractor ... upon complying with the provisions of sections 429.010 to 429.340, shall have for his or her work or labor done ... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated[.]
Public policy, however, prohibits the attachment of a mechanic’s lien on the buildings, land, or improvements owned by a public entity. Redbird Eng’g Sales, Inc. v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist., 806 S.W.2d 695, 697 (Mo.App.1991).
The County owned the property at the time that Brentwood Glass began working on the building, and the contract between the County and Cornerstone provided that any improvements installed in the building immediately became the property of the County. As such, the County is protected by “the general rule that property owned by a county or other municipal corporation, and used for public purposes cannot be sold on execution.” Sec. State Bank v. Dent Cnty., 345 Mo. 1050, 137 S.W.2d 960, 961 (1940) (internal quotations omitted). Brentwood Glass may not, therefore, perfect its mechanic’s lien against the County.
B
Section 429.070.2 also establishes a right to a mechanic’s lien against a leasehold interest:
Every mechanic, person or corporation who shall erect or construct any building; plant, improvement; or erection, or who Shall furnish any material, ... or other personal property upon- either licensed or leased lots or lands under or by virtue of any contract or account with the owner or proprietor of the license or lease or with his or its agent, ..., upon complying with the provisions of sections 429.010 to 429.340, shall have a lien upon such building, plant, improvement, erection, and also upon such materials, fixtures, ... and such other personal property and also üpon the license or lease on such lots or lands to the full extent of the number of acres or lots held under such license or lease ....
Although the County retained some control over Cornerstone’s leasehold interest, its contract with Cornerstone authorized, under certain circumstances, Cornerstone to assign its leasehold interest without the County’s prior written consent. Because the County anticipated circumstances that would end its control over the leasehold, Brentwood Glass was entitled to a mechan *302 ic’s lien against Cornerstone’s leasehold interest without violating public policy concerns. Accordingly, Brentwood Glass may have the legal right to perfect its mechanic’s lien against Cornerstone’s leasehold interest.[4]
II
To enforce a mechanic’s, lien, a party must comply with the requirements of the statute, including proper notice, timeliness, and. an adequate lien .statement. Brentwood Glass contends that the circuit court erred in granting summary judgment because there were genuine issues of material fact as to each of these requirements.
To determine whether genuine issues of material fact exist, a court may consider evidence in “discovery, exhibits or affidavits that demonstrate specific facts showing there is a genuine issue for trial.” Rule 74.04(c)(2). Courts do not weigh conflicting evidence or make credibility determinations. Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 578 (Mo. banc 2006). Instead,, .summary judgment tests “simply for the existence, not the extent” of genuine issues of material fact, viewing the evidence in the light most favorable to the non-moving party. ITT Commercial Fin., 854 S.W.2d at 378. '“A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance.” Martin v. City of Washington, 848 S.W.2d 487, 492 (Mo.banc 1993).
In response to the defendants’ statement of uncontroverted material facts, Brentwood Glass filed excerpts of depositions, affidavits, contracts, and other records. Brentwood Glass maintains that this evidence establishes genuine issues of material fact.
A
Under section 429.100, a party must provide timely notice of its intent to file a mechanic’s lien to the owner of the property or the owner’s agent as a condition precedent to creating a valid lien:
Every person except the original contractor, who may wish to avail himself of the benefit of the provisions of sections 429.010 to 429.340, shall give ten days’ notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the, same is due,
Brentwood Glass gave notice to Cornerstone and, therefore, fulfilled the statutory requirement to give notice of its intent to file a mechanic’s lien as to Cornerstone’s leasehold interest. Accordingly, the circuit court erred in granting judgment for lack of proof of notice under section 429.100.
*303 B
Section 429.080, RSMo Supp. 2005, requires that a lien be filed “within six months after the indebtedness shall have accrued.” Indebtedness accrues “when the last labor is performed or the last material is furnished under an agreement.” Manning Constr, Co., Inc. v. MCI Partners, LLC, 419 S.W.3d 134, 137-38 (Mo.App.2013) (internal quotations omitted). The date when labor was last performed is a question of fact. Id. at 138.
Brentwood Glass presents evidence that an employee installed bathroom mirrors and caulking between February 5, 2007, and February 9, 2007; installed vertical covers and exterior mullions on the storefront on February 13, 2007; and observed a water test to ensure that the property’s windows were sealed properly on February 20, 2007. In contrast, the defendants assert that “the only substantial evidence regarding when [Brentwood Glass’s] work ended on the Project was January 31, 2007,” and “[a]ny other ‘work’ allegedly performed by [Brentwood Glass] was manufactured after-the-fact in an unsuccessful effort to salvage [Brentwood Glass’s] untimely lien.”
The arguments made by defendants rely on evidence that contradicts or disputes the evidence presented by Brentwood Glass. Viewing the evidence in the light most favorable to Brentwood Glass, there is a genuine issue of material fact regarding the last day Brentwood Glass worked on the project and whether the lien-was timely filed.
C
Section 429.080, RSMo Supp. 2005, requires that a lien statement contain “a just and true account of the demand due..... after all just credits have been given[.]” A lien statement must substantially comply with the requirements of section 429.080. Springfield Underground, 102 S.W.3d at 10. “The question of adequacy of [a] subcontractor’s lien statement thus turns upon whether the statement provides detail and itemization sufficient to enable the owner to investigate and determine the propriety of the lien claim.” Commercial Openings, Inc. v. Mathews, 819 S.W.2d 347, 350 (Mo.banc 1991).
To arrive at its demand, .Brentwood Glass’s lien statement contained an . itemized record of all labor and materials it claimed to have provided. Brentwood Glass then deducted the total amount it was paid by Pal’s Glass and Clayco. By this calculation, Brentwood Glass’s lien statement showed $1,061,464.08 in unpaid charges. The defendants do not offer any. evidence that the lien statement as presented was not sufficient to investigate the propriety of the lien claims.
The inclusion of nonlienable items or honest mistakes in lienable items does not automatically invalidate the lien statement. Sears, Roebuck & Co. v. Seven Palms Motor Inn, Inc., 530 S.W.2d 695, 698-99 (Mo.banc 1975). The lien statement can still be just and true so long as the items included are “the result of honest mistake or inadvertence without intent to defraud[.]”[5] Id. at 699. When the merits of a claim rests on disputes “of elusive facts such as intent, motive, fraud, duress, un *304 due influence, mental capacity and the like” then “summary judgment is seldom appropriate.” Crow v. Crawford, & Co., 259 S.W.3d 104,113 (Mo.App.2008).
Brentwood Glass admits that the lien statement contained mistakes but contends that its lien statement substantially complied with the statute because any inaccuracies were honest mistakes made without an intent to defraud. In contrast, the defendants argue that the lien statement was not a “just and true” account of the demand due because the lien statement included: (a) work waived by lien waivers; (b) extra work not allowed by the sub-subcontract or reflected in a change order; (c) non-contract hourly labor-rates; and (d) payments Clayco made to Brentwood Glass’s subcontractors and material suppliers. Although the defendants list potentially nonlienable items claimed in Brentwood Glass’s lien statement, the only evidence they provide that Brentwood Glass included this work with an intent to defraud is that the items may not have been lienable as a matter of law.
In contrast, Brentwood Glass offers evidence that it included the items by honest mistake or by inadvertence without an intent to defraud. For example, Brentwood Glass presented evidence that Pal’s Glass expressly ordered extra work and directed Brentwood Glass not to submit a demand for payment of the extra work until all charges for the extra work could be submitted at once. Brentwood Glass also asserts that the non-contract $70 labor rate included in the statement was the reasonable value of its labor, in compliance with the mechanics’ lien standard provided in Dave Kolb Grading, Inc. v. Lieberman Corp., 837 S.W.2d 924, 931 (Mo.App.1992), which states that “[t]he lien, therefore, is not necessarily for the contract price but is only for the reasonable value of the labor and materials furnished.” Additionally, although Brentwood Glass admits it cannot recover the payments Clayco paid to Brentwood Glass’s subcontractors and material suppliers, testimony provided that because Brentwood Glass did not know Clayco paid these charges, these charges were included by honest mistake.
Viewed in the light most favorable to the non-movant, Brentwood Glass has presented evidence that nonlienable items it included in its lien statement could have been included by honest mistake or inadvertence without intent to defraud. As such, a genuine issue of material fact exists regarding whether the lien statement provided a just and true account in compliance with section 429.080, RSMo Supp. 2005.
In light of the record, the circuit court erred in granting judgment on Brentwood Glass’s mechanic’s lien claim. Judgment on Brentwood Glass’s mechanic’s lien claim is affirmed as against the County, but reversed as against Cornerstone.
Ill
Brentwood Glass additionally argues that it was error to grant judgment as to its public bond claim against the County. It was not.
A
Section 107.170.1 requires the bond of a “contractor” that “provides construction services under contract to a public entity,” not a party that merely arranges for such services to be provided by others, (emphasis added). The legislature’s careful selection of words is presumed meaningful. Hyde Park Hous. P’ship v. Dir. of Revenue, 850 S.W.2d 82, 84 (Mo banc 1993). Cornerstone did not “provide construction services” under its contract with the County and is, therefore, not a “contractor” under section 107.170.1.
*305 B
Even if section 107.170 had required a bond in this case, Brentwood Glass’s claim under that statute would still fail because Brentwood Glass did not name a party against whom it could recover. The court of appeals previously has held certain individual officials—but not a public entity itself—liable for failing to require contractors to furnish a bond under the statute. See, e.g., Energy Masters Corp. v. Fulson, 839 S.W.2d 665, 670 (Mo.App. 1992). Brentwood Glass sued only the County, and not any individual public official. The decisive fact is that the County— as a political subdivision—is immune from suit under the doctrine of sovereign immunity. State ex rel. Missouri Dep’t of Agrie, v. McHenry, 687 S.W.2d 178, 182 n. 5 (Mo.banc 1985); section 537.600.
Unless expressly waived by statute, sovereign immunity bars suit against the government or its subdivisions for the actions of their employees. State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell, 91 S.W.3d 612, 615 (Mo.banc 2002). No such waiver exists in this statute. See section 107.170. Accordingly, even if Brentwood Glass had stated (or is allowed to state.on remand) a valid claim under the bond statute, it would be unable to recover from the party against whom it made that claim.
The provisions in the judgment granting summary judgment on Brentwood Glass’s public works construction bond claim under section 107.170.1(1) are affirmed.
Conclusion
The judgment is affirmed in part and reversed in part. Judgment on Brentwood Glass’s mechanic’s lien claim is reversed as to its claim against Cornerstone’s leasehold interest. In all other respects, the judgment is affirmed. The cause is remanded.
Fischer and Wilson, JJ., concur;
Breckenridge, C.J., concurs in part and dissents in part in separate opinion filed;
Stith, J., concurs in opinion of Breckenridge, C.J.;
Draper, J., concurs in part and dissents in part in separate opinion filed;
Teitelman and Russell, JJ., concur in opinion of Draper, J;

. All statutory references are to RSMo 2000, unless otherwise indicated.

. National City Bank of the Midwest was the bond lender, and UMB Bank was the holder of the bonds. Paul M. Macon was the trustee of the deed of trust securing the bonds to National City Bank, and Victor Zarilli was the trustee of the deed of trust securing the bonds held by UMB Bank.

. The circuit court granted, judgment on all claims and causes of action. Brentwood Glass does not appeal the circuit court’s judgment other than on counts VIII and IX.

. After Brentwood Glass filed this action to perfect its lien against Cornerstone's leasehold interest, but before judgment was entered below, Cornerstone acquired the County’s reversionary interest (i.e., the fee) as it was required to do under the lease. Generally, a mechanic's lien on a leasehold interest may be enforced by selling the leasehold at execution. Deatherage v. Sheidley, 50 Mo.App. 490, 496 (Mo.App. 1892); see also section 429.070,4. The legal effect of the enforcement of the acquisition of the fee by Cornerstone was not raised; briefed, or argued by any party on appeal and, therefore, is not addressed by this Court. The Court does note, however, that section 8.5 of the contract between the County and Cornerstone provided that Cornerstone would ."not directly or indirectly create, incur, assume or suffer to exist any lien on or with respect to the Project” and section 11.2 provided that the County would convey the fee to Cornerstone subject to "those liens and encumbrances resulting from the failure of [Cornerstone] to perform or observe any of the agreement on its part contained in this [contract],”

. The defendants contend that the lien claimant has the burden to prove that it substantially complied with the statute and that any nonlienable charges were included due to an honest mistake. To defend a motion for summary judgment, Brentwood Glass must show only that evidence exists of facts that are "actually contested, are subject to conflicting intérpretations, or if reasonable persons might differ as to their significance.” Martin, 848 S.W.2d at 492. -