**SEPTAGON CONSTRUCTION COMPANY INCORPORATED–COLUMBIA, et al., Respondents,**

**Stockman Construction Corp., Appellant–Respondent,**

v.

**The INDUSTRIAL DEVELOPMENT AUTHORITY OF the CITY OF MOBERLY, Mayor Bob Riley and the Moberly Redevelopment Corporation, Respondents,**

**City of Moberly, Missouri and Moberly Area Economic Development Corp, Respondent–Appellant.**

**WD 79474, (Consolidated with WD 79489)**

Missouri Court of Appeals, Western District.

Opinion filed: March 7, 2017

Application for Transfer Denied June 27, 2017

---

1. We deny all other points as moot.

Margaret C. Eveker, for Respondent The Industrial Development Authority of the City of Moberly, et al., City of Moberly and Moberly Area Economic Development Corp.

Charles S. Kramer, for Septagon Construction Company, Incorporated and Stockman Construction Corp.

Before Division Three: Karen King Mitchell, Presiding Judge, Victor C. Howard, Judge and Gary D. Witt, Judge

## VICTOR C. HOWARD, JUDGE

Stockman Construction Corp. appeals the summary judgment in favor of the Moberly Defendants[1] on Stockman's claims seeking relief for the failure of the Moberly Defendants to obtain a public works payment bond, breach of contract, and unjust enrichment. The City and the EDC cross-appeal from the judgment of the trial court denying their motion for costs incurred. The judgment is affirmed.

## Factual and Procedural Background

In 2010, Mamtek US, Inc. sought financing and incentives to construct a sucralose manufacturing facility in Moberly (Mamtek Project). The EDC worked with various state entities to bring the Mamtek Project to Moberly for the purpose of bringing jobs to the area. The Authority issued bonds to help finance the construction of the sucralose facility to be owned eventually by Mamtek. The City declared blighted the property on which the Mamtek Project was to be constructed (Subject Property). Property transfers occurred between the EDC and the City to the Authority so that the Authority could issue a Deed of Trust for the Subject Property to provide security to the bondholders until Mamtek made all the required bond payments.

Specifically, a Management, Operating, and Purchase Agreement, a Development Agreement, and a Trust Indenture, effective July 1, 2010, set forth the financing of the Mamtek Project. Pursuant to these various agreements, Mamtek agreed to construct, manage, and operate the Mamtek Project through the term of the bonds

1. The Moberly Defendants are collectively the City of Moberly (City), Mayor Bob Riley, the Industrial Development Authority of the City of Moberly (Authority), the Moberly Redevelopment Corporation (RDC), and the Moberly Area Economic Development Corporation (EDC). The Authority is an industrial development authority formed under Chapter 349 for the purpose of bringing commercial, industrial, agricultural, or manufacturing facilities to the Moberly area. The RDC is a redevelopment corporation formed under Chapter 353 for the purpose of promoting redevelopment in Randolph County and the City of Moberly. Finally, the EDC is a non-profit corporation formed under Chapter 355 for the purposes of promoting business and industrial expansion, the increase and availability of employment, and the general economic welfare of Randolph County and the Moberly area.

(September 2025), and the City agreed to timely make the bond proceeds available to pay or reimburse Mamtek for the construction of the Project. Mamtek further agreed to make timely payments to the City in the amount of the principal and interest on the bonds. The City would own the Project during the term of the bonds, and Mamtek would be obligated to purchase, and the City would be obligated to sell, the Project on the expiration of the term or the redemption of the bonds. Additionally, if Mamtek defaulted on any of its obligations, the interests of the Subject Property would transfer to the bond trustee, UMB Bank, for the benefit of the bondholders. The financing agreements did not have any design terms, plans or specification, schedule for completion, or change order terms.

Mamtek entered into a construction contract with Septagon Construction to design and construct the Mamtek Project. The contract identified Mamtek as the Owner and Septagon as the contractor. It provided that all portions of the Project that Septagon does not perform itself shall be performed under subcontracts, the subcontracts will be between Septagon and the subcontractor, and Septagon shall be responsible for supervising and for the performance of the subcontractors. The contract contemplated that mechanic's liens could be asserted on the Subject Property. Septagon, as general contractor, obtained a performance and payment bond naming Mamtek as Owner and the City as co-obligee.

As the Mamtek Project moved forward, Mamtek submitted payment requests with supporting invoices to the City to receive payment from the bond proceeds for work performed on the Subject Property. After

reviewing the requests for compliance with the financing terms, the City submitted authorizations to the bond trustee, UMB Bank, to make payments from the bond proceeds.

Stockman Construction agreed to perform certain construction work directly for Mamtek pursuant to a contract between the two entities. Stockman began work and billed Mamtek. The City authorized UMB Bank to make payments of $331,470.05 to Stockman for its work on the Moberly Project.

Ultimately, Mamtek did not complete the Project and defaulted on its obligations to make the required bond payments. The bond trustee, UMB Bank, took possession and control of the Subject Property on behalf of the bondholders.

Thereafter, in February 2012, Stockman filed suit against the Moberly Defendants and others essentially seeking damages for nonpayment of over $349,000 for additional work it performed for Mamtek. Specifically, it asserted claims against the Moberly Defendants for violation of section 107.170(2)[2] for failing to require Mamtek to obtain a public works payment bond, breach of contract, and unjust enrichment. Alternatively, it asserted a mechanic's lien claim against the Moberly Defendants and others to determine the respective rights of all parties asserting a lien on the Subject Property. Septagon and other subcontractors also filed mechanic's lien suits. Septagon's lawsuit included the alternative claims against the City and the Authority for violation of section 107.170(2). The trial court consolidated the lawsuits.

In March 2013, UMB Bank filed a motion requesting the trial court to order the sale of the Subject Property, deposit the

---

**2.** All statutory references herein are to RSMo 2000, supplemented by amendments through   the current date unless otherwise noted.

funds from such sale into the court registry, and at some point in the future, determine the rights of the mechanic's lien claimants and distribute the funds accordingly. UMB Bank also sought reimbursement of its reasonable expenses in maintaining and marketing the property. The City and the EDC filed a motion in April 2013 for their costs in maintaining the Subject Property since Mamtek's default and before UMB Bank took possession of it. The next month, the Moberly Defendants filed a notice with the trial court disclaiming any and all right, title, and interest in Subject Property.

In June 2013, the trial court ordered the Subject Property sold and the proceeds placed in the court registry. Six months later, the trial court entered an order approving a commercial real estate sales contract and the sale of the Subject Property. In accordance with its prior order of sale, the trial court ordered the sale proceeds placed in the court registry and that valid liens and claims shall attach to the sale proceeds and the validity and priority of liens, as well as claims for reimbursement of costs incurred in maintaining the Subject Property, would be determined at a later time.

In April 2014, the Moberly Defendants filed a joint motion for summary judgment on all of Stockman's claims against them. They asserted that the EDC, the RDC, and the Authority were entitled to judgment as a matter of law on Stockman's claim for violation of the public works payment bond statute, section 107.170, because there was no public works contract between those entities and Stockman and none of the entities satisfy the definition of a "public entity" under the statute. They further asserted that Stockman's public works payment bond claim failed against the City and the mayor because the agreement between City and Mamtek was not a public works contract and a mechanic's lien was the proper remedy. The Moberly Defendants argued that Stockman's claim for breach of contract failed as a matter of law because there was no contract between the City and Stockman and Stockman was not a third-party beneficiary to the agreements between the City and the Authority and Mamtek. Finally, the Moberly Defendants asserted that they were entitled to judgment as a matter of law on Stockman's claim for unjust enrichment because such a claim cannot be made against municipal corporations, none of the Moberly Defendants benefitted from Stockman's work, and the City paid Stockman for its work from bond proceeds.[3]

Stockman responded and filed a cross-motion for summary judgment. In February 2015, after arguments on the motion, the trial court granted summary judgment in favor of the Moberly Defendants against Stockman on all counts for the reasons stated in the Moberly Defendants' motion. It further denied Stockman's motion for summary judgment.

Several months later in November 2015, the remaining parties including UMB Bank, Stockman, Septagon, and others filed a joint motion for release of funds and dismissal of the remaining claims. The remaining parties proposed a settlement wherein each would accept an agreed upon payment from the court registry to resolve all remaining claims and facilitate the conclusion of the case while reserving the right to appeal the summary judgment in favor of the Moberly Defendants. The trial

---

**3.** The Moberly Defendants also claimed they were entitled to judgment as a matter of law on Stockman's remaining claims against them including its mechanic lien claim. Stockman does not appeal the trial court's grant of summary judgment on those claims so they are not discussed in detail.

court entered an order directing payout of the funds in the court registry according to the agreement of the remaining parties. A month later, the trial court issued its final judgment reaffirming its prior summary judgment in favor of the Moberly Defendants and dismissing all other claims of all parties. This appeal by Stockman and cross-appeal by the City and the EDC followed.

## Stockman's Appeal

■■■ Stockman raises three points on appeal challenging the trial court's grant of summary judgment in favor of the Moberly Defendants.[4] Appellate review of summary judgment is *de novo. Mo. Bankers Assoc., Inc. v. St. Louis Co.*, 448 S.W.3d 267, 270 (Mo. banc 2014). "Summary judgment is appropriate when the record demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Summary judgment can be affirmed on appeal on an entirely different basis than that posited at trial and by any appropriate theory supported by the record. *Id.* at 270–71; *Turner v. School Dist. of Clayton*, 318 S.W.3d 660, 664 (Mo. banc 2010).

■■■ In its first point, Stockman asserts that the trial court erred in granting summary judgment in favor of the Moberly Defendants on its claim for violation of section 107.170 for failing to require Mamtek to obtain a public works payment bond. Missouri public policy provides that subcontractors and suppliers are entitled to the protection of either mechanic's liens under section 429.010 or public works payment bonds under section 107.170 depending on the nature of the property they improve. *Collins & Hermann, Inc. v. TM2*

*Constr. Co., Inc.*, 263 S.W.3d 793, 796 (Mo. App. E.D. 2008). The purpose of the mechanic's lien law is to give security to mechanics and materialmen for labor and materials furnished in improving another's property. *Brentwood Glass Co., Inc. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 300 (Mo. banc 2016). Generally, mechanic's liens statutes should be liberally construed in favor of lien enforceability. *Id.* at 301.

An exception exists, however, that bars the imposition of a mechanic's lien on public property owned by a traditional governmental body held for the benefit of the public and reasonably necessary for public use. *Collins & Hermann*, 263 S.W.3d at 797; *River's Bend Red–E–Mix, Inc. v. Parade Park Homes, Inc.*, 919 S.W.2d 1, 3 (Mo. App. W.D. 1996). Section 107.170.2 provides:

> It is hereby made the duty of all public entities in this state, in making contracts for public works, the cost of which is estimated to exceed fifty thousand dollars,[5] to be performed for the public entity, to require every contractor for such work to furnish to the public entity a bond with good and sufficient sureties, in amount fixed by the public entity, and such bond, among other conditions, shall be conditioned for the payment of any and all materials, incorporated, consumed or used in connection with the construction of such work, and all insurance premiums, both for compensation, and for all other kinds of insurance, said work, and for all labor performed in such work whether by subcontractor or otherwise.

Section 107.170.1(1) defines a "contractor," in pertinent part, as "a person or business

---

4. The Moberly Defendants filed a motion to dismiss Stockman's appeal, which was taken with the case. The motion to dismiss is denied.

5. The minimum amount for a contract was changed from twenty-five thousand dollars to fifty thousand dollars in 2014.

entity who provides construction services under contract to a public entity." A "public entity" is "any official, board, commission or agency of this state or any county, city, town, township, school, road district or other political subdivision of this state." § 107.170(2). "Public works" is defined in subsection (3) as "the erection, construction, alteration, repair or improvement of any building, road, street, public utility or other public facility owned by the public entity." § 107.170.1(3).

■ . The purpose of the public works payment bond statute is to afford those furnishing labor or material on public works the same measure of protection afforded by the mechanic's lien law where the property is not of a public character. *Collins & Hermann*, 263 S.W.3d at 798. Section 107.170 gives a right to surety bond protection to every person or entity that would otherwise have a right to file and enforce a mechanic's lien and, thus, must be broadly construed to carry out this purpose. *Id.*

■ Stockman acknowledges that a subcontractor is entitled to the protection of either mechanic's liens or public works payment bonds depending on the nature of the property improved. It contends that the Moberly Defendants, as public entities entering into a public works contract, were required under section 107.170 to ensure Mamtek obtained a public works payment bond with sufficient sureties to safeguard payment to it and upon failing to do so became liable for the amounts owed to it.

Section 107.170, however, did not require the Moberly Defendants to ensure Mamtek furnish a public works payment bond. A recent Missouri Supreme Court case, *Brentwood Glass Company v. Pal's Glass Service*, 499 S.W.3d 296 (Mo. banc 2016), provides guidance here. In *Brentwood Glass*, St. Louis County issued industrial revenue bonds to finance and develop certain property for the headquarters of Smurfit–Stone Container Enterprises. *Id.* at 299. The County contracted with Cornerstone VI, LLC to construct the project on behalf of the County with Cornerstone drawing upon the bonds. *Id.* The contract also provided for the County to lease the property to Cornerstone. *Id.* Clayco, Inc. was the general contractor for the project, and the plaintiff, Brentwood Glass, was a sub-subcontractor. *Id.* Brentwood filed a mechanic's lien claiming over $1 million in unpaid work and listing Cornerstone as the owner. *Id.* at 300. It then filed a lawsuit against the County, Cornerstone, and others. *Id.*

On Brentwood's claim against the County for failing to require a public works payment bond pursuant to section 107.170, the Supreme Court affirmed summary judgment in favor of the County. *Id.* at 304. It explained that "[s]ection 107.170 requires the bond of a 'contractor' that '*provides* construction services under contract to a public entity,' not a party that merely arranges for such construction services to be provided by others." *Id.* (quoting § 107.170)(emphasis in original). It stated that the legislature's careful selection of words in its definition of "contractor" is presumed meaningful. *Id.* It held that Cornerstone did not provide construction services under its contract with the County and, therefore, was not a contractor under the statute. *Id.*

In their statement of uncontroverted material facts, the Moberly Defendants asserted that Mamtek did not perform any construction services and supported its assertion with the affidavit of Corey Mehaffy, the president of the Authority during all times relevant to the claims. Stockman denied the asserted material fact arguing that it performed work on the Project pursuant to its contract with Mamtek and that Mamtek contracted with the City "to

design, construct and equip the Mamtek Project, which was accomplished through contracts with others to provide such construction." This evidence, however, did not controvert the material fact that Mamtek did not provide construction services and did not demonstrate the existence of a genuine issue for trial. Stockman's response instead admitted that others, not Mamtek, performed construction services.

■ The Moberly Defendants further asserted in their statement of uncontroverted facts that Mamtek submitted payment requests with supporting invoices on behalf of itself and others to the City to receive payment from the bond proceeds and that it never requested nor received a payment for performing any construction service. The assertions were supported by the affidavit of Gregory Hodge, the City Finance Director who reviewed all payment requests and, if requests complied with financing terms, submitted authorizations to UMB Bank to make payments and by documents attached to the affidavit showing the details of payments under two bond draws. Stockman denied the assertions arguing that Mr. Hodge's affidavit was inadmissible hearsay because it was not based on personal knowledge. Mr. Hodge's role as City Finance Director who personally reviewed and authorized the payment requests was sufficient to establish his personal knowledge of whether Mamtek requested or received payment for performing any construction service. *See Rustco Products Co. v. Food Corn, Inc.*, 925 S.W.2d 917, 924 (Mo. App. W.D. 1996)(affiant's role as director in company sufficient to establish personal knowledge of statements concerning an agreement entered into with defendant, sale price and terms of agreement, and sale and delivery of product). Furthermore, Stockman did not challenge the genuineness or admissibility of the documents attached to the affidavit that verified Mr. Hodge's statements. It provided no evidence to contradict Mr. Hodge's affidavit or to demonstrate that Mamtek requested or received payment for performing any construction service. The non-moving party may not rely on mere allegations and denials of the pleadings but must make specific references to the discovery, exhibits, or affidavits that demonstrate specific facts showing the existence of a genuine issue for trial. Rule 74.04(c)(2); *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993).

The facts were undisputed that Mamtek did not provide construction services under its contract with the Moberly Defendants. Mamtek, therefore, was not a contractor under section 107.170 requiring that it furnish a public works payment bond. Summary judgment in favor of the Moberly Defendants on Stockman's claim for violation of section 107.170 was not error. The point is denied.

■ In its second point on appeal, Stockman contends that the trial court erred in granting summary judgment in favor of the City on its claim of breach of contract. Stockman asserts that the City breached a provision of the Management, Operating, and Purchase Agreement that required Mamtek to obtain a construction surety bond. Specifically, it argues that the City failed to approve an appropriate bond to cover the work to be performed by Stockman thus breaching its obligations under the contract and rendering it liable to Stockman as an intended third-party beneficiary of the financing agreements.

■ A third-party beneficiary is one who is not privy to a contract but may nonetheless maintain a cause of action for breach of contract. *Kansas City Hispanic Ass'n Contractors Enter., Inc. v. City of Kansas City*, 279 S.W.3d 551, 555 (Mo.

App. W.D. 2009). Third-party beneficiary rights depend on the terms of the contract itself. *Id.* The third-party beneficiary need not be named in the contract, but the contract terms must clearly and directly express an intent to benefit an identifiable person or class. *Id.* A party claiming third-party beneficiary rights has the burden of showing that provisions of the contract were intended for its direct benefit. *Id.*

▮▮▮ Third–party beneficiaries fall into three types: donee, creditor, and incidental. *Id.* Donee and creditor beneficiaries may pursue actions and recover under a contract, but incidental beneficiaries may not. *Id.* "A donee third-party beneficiary exists when 'the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary.'" *Id.* (quoting *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 260 (Mo. banc 2002)). "A creditor beneficiary is one upon whom the promisee intends to confer the benefit of the performance of the promisee's contract with the promisor and thereby discharge an obligation or duty the promisee owes the beneficiary." *Id.* (internal quotes and citation omitted). Finally, an incidental beneficiary is one who will benefit from the performance of the promise but is neither a promisee nor an intended beneficiary. *Id.*

Section 4.2(c) of the Management, Operating, and Purchase Agreement between the City and Mamtek provided:

> Before undertaking any construction of the Project, the Company (Mamtek), at the sole cost and expense of the Company, shall obtain a construction surety bond naming the City and the Trustee as beneficiaries or insureds issued by a generally recognized responsible insurance company or companies authorized to do business in the State of Missouri or generally recognized international insurers or reinsurers with an A.M. Best rating of "A-" and reasonably acceptable to the City in the total aggregate amount of all Construction Contracts or such other surety, insurance or bond as may be acceptable to the City to insure the timely and complete construction of the Project.

Stockman contends that although it was not expressly named as a third-party beneficiary under the financing agreements, the agreements expressed an intent to benefit it as a member of an identifiable class—construction contractors on the construction contracts as those terms were used and defined in the agreements.

To the contrary, the financing agreements contained express provisions specifying that the contracting parties were not conferring any benefits or rights under the agreements to third parties. Section 7.10 of the Development Agreement between the City, the Authority, and Mamtek provided, in pertinent part, "**No Third Party Beneficiaries**. . . . The parties do not intend to confer any benefit hereunder on any person or entity other than the parties hereto." Additionally, Section 1406 of the Trust Indenture provided:

> **Parties Interested Herein.** Nothing in this Indenture, expressed or implied is intended or shall be construed to confer upon, or give to, any person or entity, other than the Authority, the Trustee, the Paying Agent and the Registered Owners of the Bonds, any right, remedy or claim under or by reason of this Indenture, or any covenant, condition or stipulation hereof, and all covenants, stipulations, promises and agreements in this Indenture, contained by and on behalf of the Authority shall be for the sole

and exclusive benefit of the Authority, the Trustee, the Paying Agent and the Registered Owners of the Bonds.

Furthermore, the Management, Operating, and Purchase Agreement explicitly precluded recovery against the City of pecuniary damages for any breach. Section 15.4 provided:

**No Pecuniary Liability.** No provision, covenant or agreement contained in this Management Agreement, the Indenture or the Bonds, or any obligation herein or therein imposed upon the City, or the breach thereof, shall constitute or give rise to or impose upon the City a pecuniary liability or a charge upon the general credit or taxing powers of the City or of the State or any political subdivision thereof.

The financing agreements indicated that the contracting parties did not intend to provide Stockman with third-party rights under them. They were not made expressly for Stockman's benefit or bound or obliged the City to Stockman. Stockman was, therefore, at most, an incidental third-party beneficiary under the agreements and could not maintain a cause of action seeking monetary damages for violation of the Management, Operating, and Purchase Agreement. The trial court, therefore, properly granted summary judgment in favor of the City on Stockman's breach of contract claim. The point is denied.

In its last point on appeal, Stockman challenges the trial court's summary judgment in favor of the Moberly Defendants on its claim of unjust enrichment.[6] It contends that it unquestionably conferred a benefit on the project and property in favor of the Moberly Defendants and the

retention of such benefit by the Moberly Defendants without paying Stockman for the work it performed would be unjust and inequitable.

Section 432.070 provides in pertinent part:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless . . . such contract, including consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

It is well established in Missouri "that all contracts with a municipal corporation must be in writing and all persons dealing with a municipal corporation are charged with notice of that law." *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 708 (Mo. App. W.D. 2004)(internal quotes and citation omitted). The statutory requirement that contracts be in writing is mandatory, and strict compliance is required to bind the specified municipal entities. *Mays–Maune & Assocs., Inc. v. Werner Bros., Inc.*, 139 S.W.3d 201, 208 (Mo. App. E.D. 2004).

Section 432.070's purpose is to protect municipalities. *Gill Constr.*, 157 S.W.3d at 708. Thus, the provision has been interpreted by Missouri courts to preclude recovery against municipal entities on any theory of implied contract. *Mays–Maune*, 139 S.W.3d 201, 208 (Mo. App. E.D. 2004). The fact that a municipal entity has received the benefit of a plaintiff's performance does not make it liable on the theory of implied contract. *Id.*

The facts were undisputed that no contract existed between Stockman and the

---

**6.** Stockman's unjust enrichment claim was against all of the Moberly Defendants except

Mayor Riley.

City. Similarly, no contract existed between Stockman and the Authority, the EDC, and the RDC, which are, in a broad sense, municipal corporations designed to perform a public governmental purpose. *See St. Louis Housing Auth. v. City of St. Louis*, 361 Mo. 1170, 239 S.W.2d 289, 295 (1951)(municipal corporation includes in the broader sense public corporations created to perform some essential public service); *Pace v. Land Clearance for Redevelopment Auth. of Kansas City*, 713 S.W.2d 34, 36 (Mo. App. W.D. 1986)(redevelopment authority subject to strict compliance with section 432.070 as a municipal corporation exercising public and essential governmental functions). Without compliance with section 432.070, Stockman's claim for unjust enrichment, a theory of implied contract, was also precluded. *See Mays–Maune*, 139 S.W.3d at 208–09 (material supplier's claim for unjust enrichment against a school district properly dismissed where supplier failed to plead the existence of a signed, written contract with the school district as required by section 432.070); *Halamicek Bros., Inc. v. St. Louis Co.*, 883 S.W.2d 108, 110 (Mo. App. E.D. 1994)(without a valid written contract, recovery by an unsuccessful bidder on a county project against the county for unjust enrichment, an equitable remedy, was precluded). The trial court properly granted summary judgment in favor of the City, the Authority, the EDC, and the RDC on Stockman's unjust enrichment claim. The point is denied.

### The City and the EDC's Cross–Appeal

■ In the sole point on their cross-appeal, the City and the EDC claim that the trial court erred in denying their motion for costs in maintaining the Subject Property. They claim they were entitled to the costs of just over $10,000 expended in securing, improving, and maintaining the Subject Property because such actions preserved the property for sale and the benefit of those with an interest in it.

The City and the EDC, however, offer no authority to support their claim for reimbursement of costs in this case. They fail to set forth any provisions in the financing agreements or applicable mechanic's lien statutes that authorized an award of costs for maintaining the Subject Property. And the cases cited by the City and the EDC in support of their claim are not applicable here. *See U.S. v. Peckham*, 72 F.3d 672, 674 (8th Cir. 1995)(reimbursement for real estate taxes paid as a cost of the foreclosure sale); *Gloyd v. Gloyd*, 293 Mo. 163, 239 S.W. 73, 80 (1922)(allowance of $10,000 to special commissioner appointed by court to sell tracts of real estate as compensation for services); *Clark v. Dady*, 131 S.W.3d 382, 390 (Mo. App. W.D. 2004)(in partition action, parties entitled to reimbursement for expenditures relating to property for taxes, insurance, and necessary repairs and improvements); *Hollida v. Hollida*, 131 S.W.3d 911, 916 (Mo. App. S.D. 2004)(allowance for sheriff's expenses and attorney's fees associated with judicial sale of real property); *Weatherwax v. Redding*, 953 S.W.2d 162, 165 (Mo. App. S.D. 1997)(ejectment statute allows compensation for improvements made on property); *Neal v. Neal*, 776 S.W.2d 861, 867–8 (Mo. App. S.D. 1989)(applying source of funds rule in determining whether marital funds contributed to purchase or improvement of property). Furthermore, a month after the City and the EDC filed its motion for costs, the Moberly Defendants filed a notice with the trial court "disclaim[ing] any and all right, title, and interest in the property and project in this case." They attached resolutions of each entity that "make clear that none of the Moberly Defendants has any interest of any kind in the property or project." The disclaimer was broad and did not exclude

the motion for costs. The trial court did not err in denying the City and the EDC's motion for costs in maintaining the Subject Property. The point is denied.

The judgment is affirmed.

All concur.